No. 64,798

ARMORED SERVICES, INC., CHANCE OPERATIONS, INC., AND CON-
CRETE ACCESSORIES COMPANY, INC., *Appellees*, v. CITY* OF
WICHITA, KANSAS, *Appellant*.

(804 P.2d 987)

Opinion
filed January 18, 1991.

*Joe Allen Lang*, senior assistant city attorney, argued the cause, and
*Thomas R. Powell*, city attorney, and *Dana J. Winkler*, assistant city attorney,
were with him on the brief for appellant.

*Stephen M. Joseph*, of Joseph, Robison & Anderson, P.A., of Wichita,
argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: In this action, the trial court held that the City of
Wichita's false alarm ordinance was unconstitutional due to that
part of the definition of false alarm which defines false alarm as
a "signal transmitted in the absence of an alarm condition," a
definition which the court found to be vague.

Armored Services, Inc., Chance Operations, Inc., and Concrete Accessories Company, Inc., (System Users) have alarms installed at their offices. When the alarm is triggered, it does not ring law enforcement or emergency personnel directly. The alarms are connected to a central station, which, in turn, notifies emergency personnel. The companies which run the central stations are not parties to this action.

Wichita, where the System Users in this action are located, has an ordinance which provides for "administrative fees" for false alarms. The System Users in this action had the penalties assessed against them for a number of false alarms. They exhausted their administrative remedies and appealed to the district court pursuant to K.S.A. 1989 Supp. 60-2101(d). In the district court, the System Users also petitioned for a declaratory judgment that the ordinance was unconstitutional.

The district court held that there was no evidence to support the assessment of penalties against the System Users and held that the ordinance was unconstitutionally vague. On appeal, the City abandons its argument that the penalties were proper and only challenges the trial court's determination that the ordinance is unconstitutional.

The purpose of the Wichita alarm ordinance is set forth in the ordinance itself: "[t]o reduce the number of . . . false alarms." Wichita Code, § 3.40.010 (1987). The ordinance defines a false alarm as:

"activation of an alarm system . . . *through mechanical failure, malfunction, improper installation, improper adjustment, negligence of a person, or an alarm signal transmitted in the absence of an alarm condition* except when initiated by an act of God. Provided, however, that when the communications center is notified within two minutes of receipt of the alarm activation that [emergency personnel] are not required at the alarm location, such alarm activation shall not be deemed a false alarm for purposes of assessment of any administrative charge." (Emphasis supplied.) Wichita Code § 3.40.020 (1987).

The phrase "absence of an alarm condition" is not specifically defined by the ordinance, and this is the phrase the district court found to be ambiguous.

The ordinance establishes a graduated schedule of penalties or "administrative service fees" for false alarms occurring during each

quarter of the year. Wichita Code § 3.40.090 (1987). The ordinance also establishes a rebuttable presumption that the central monitoring station caused the malfunction:

"[W]here the alarm system is connected to a central station, it shall be presumed the false alarm was due to a malfunction of the system and the administrative charge assessed against the central station who shall be responsible for the payment thereof unless said central station can show the false alarm was caused by the system user who shall then be liable for the administrative charge." Wichita Code § 3.40.090 (1987).

The trial court reasoned that "in the absence of an alarm condition" could not mean alarms caused by mechanical failure, malfunction, improper installation, improper adjustment, or negligence of a person. The court said:

"Some other cause for an alarm was intended to be covered [by that phrase].

. . . .

"[The Alarm Administrator] found the alarms were false because 'there was no known evidence of any effort to unlawfully enter the premises at the dates and times shown' on the dispatch cards and, therefore, concluded that the alarms were transmitted in the absence of an alarm condition. It follows then that the Alarm Administrator believes that 'the absence of an alarm condition' means 'no evidence of an attempted break-in.' However, that definition is fatally flawed because it does not exclude alarms caused by (a) mechanical failure, (b) malfunction, (c) improper installation, (d) improper adjustment, (e) negligence of a person, or (f) acts of God. . . .

". . . The Council intended that the plaintiffs and other system users should not be responsible for false alarms caused by malfunctions. That is the only possible reason for the rebuttable presumption created by the Ordinance. When a system malfunctions, there is no evidence of an attempted break-in. If the lack of break-in evidence means there was no alarm condition, and the absence of an alarm condition means the alarm was false, then the Alarm Administrator can make the plaintiffs responsible for a malfunctioning alarm system contrary to the wishes of the Council."

In analyzing this ordinance, certain rules of construction need to be considered. The constitutionality of a statute (or ordinance) is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must appear the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done. Statutes are not stricken down unless the infringement of superior law is clear

beyond substantial doubt. *Moody v. Board of Shawnee County Comm'rs,* 237 Kan. 67, 74, 697 P.2d 1310 (1985).

This court recently again set forth the rules regarding vagueness for criminal statutes in *City of Wichita v. Wallace,* 246 Kan. 253, Syl. ¶ 2, 788 P.2d 270 (1990):

"The test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice."

Here, the ordinance being challenged is not criminal in nature, but, rather, provides for civil penalties. In *In re Brooks,* this court said, "In determining constitutional challenges for vagueness, greater leeway is afforded statutes regulating business than those proscribing criminal conduct." *In re Brooks,* 228 Kan. 541, 544, 618 P.2d 814 (1980) (citing *Papachristou v. City of Jacksonville,* 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 [1972]). See *Wallace,* 246 Kan. at 259; *State v. Dunn,* 233 Kan. 411, 418, 662 P.2d 1286 (1983); *Cardarella v. City of Overland Park,* 228 Kan. 698, 620 P.2d 1122 (1980).

Under the ordinance, a false alarm is presumed to be the fault of the central station. Wichita Code § 3.40.090 (1987). To avoid a fine, the central station must show that the false alarm "was caused by the system user." In order words, for a system user to be liable for the fine, there must be a showing by the central station that that system user was negligent. However, the central station can be held to be liable absent a showing of fault; it is presumed to be liable.

With this framework in mind, the definition of false alarm and "absence of an alarm condition" as suggested by the City makes sense. The central station is responsible for all of the alarm equipment installed with the system user, the central station is liable for mechanical failure, malfunction, improper installation, improper adjustment, and negligence of a person at the central station. Because the system user is only liable if the central station can show fault, the system user is liable for "negligence of a person" at the system user's location.

Liability for an "alarm¨ signal transmitted in the absence of an alarm condition" falls on the central station, which is presumed liable without a showing of fault. This provision is simply a strict

liability provision. If an alarm is given in a circumstance where it is unwarranted, *i.e.*, no evidence of a burglary, fire, robbery, *etc.*, the central station (which is presumed liable) is liable. The only way for the central station to escape liability, other than to show fault by a system user, would be to show that the cause of the alarm was an act of God.

The trial court's reasoning that the ordinance is vague because no one could offer an example of "an alarm signal transmitted in the absence of an alarm condition" misses the point. The phrase is intended to cover situations where there is no explanation for the alarm signal and covers situations in which the central station denies any fault on its part, but is unable to show that the system user was at fault.

In our opinion, the ordinance is not vague. The trial court's judgment to the contrary is reversed. That part of the judgment holding the appellees are not subject to the administrative penalties due to a lack of evidence is affirmed.

Affirmed in part and reversed in part.