No. 66,337

Todd A. Hainline, *Appellant*, v. Rod Bond, Secretary, Professional Practices Commission, and Kansas State Board of Education, *Appellees*.

(824 P.2d 959)

Opinion filed January 17, 1992.

*David M. Schauner*, of Kansas-National Education Association, and *David M. Rapp*, of Hinkle, Eberhart & Elkouri, of Wichita, argued the cause, and *Jonathan M. Paretsky*, of the Kansas-National Education Association, was with *David M. Schauner* on the briefs for appellant.

*Dan Biles*, of Gates & Clyde, Chartered, of Overland Park, argued the cause, and *Rodney J. Bieker*, of Kansas Department of Education, was with him on the brief for appellees.

*William H. Dye*, of Foulston & Siefkin, of Wichita, was on the brief for intervenor/appellant Unified School District No. 259.

The opinion of the court was delivered by

McFARLAND, J.: Todd A. Hainline appeals from the judgment of the district court affirming the 140-day suspension of his teaching certificate imposed by the State Board of Education. The suspension was based upon the commission of an act of immorality, namely burglary and theft.

The facts may be summarized as follows. On March 19, 1989, Wichita police officers responded to a burglary call at the former NoMar Theater located at 2141 North Market. The building was being used as a furniture warehouse by its owner, Basham's Furniture Rental, Inc. Padlocks on two doors securing the building had been cut off. The building was searched by the officers. Hainline and a friend were discovered lying on the floor behind some boxes. Hainline was arrested and charged with burglary and theft. At the time he was a certified Kansas teacher employed by U.S.D. 259 and was assigned to teach art at Southeast High School. Upon his arrest, Hainline was suspended with pay by U.S.D. 259. After Hainline entered into a diversion agreement, U.S.D. 259 transferred him to North High School.

The Secretary to the Professional Practices Commission (Commission) of the State Board of Education (Board) filed a complaint with the Commission seeking revocation of Hainline's certificate. On February 28, 1990, the Commission filed its "Initial Order," which recommended that Hainline's teaching certificate be sus-

pended until July 30, 1990. On March 14, 1990, the Board entered its "Final Order," which adopted the Commission's order and suspended Hainline's certificate for 140 days commencing on the "date of final resolution of this matter." Hainline filed a motion for reconsideration, which was denied. He then filed an appeal to the district court. The district court affirmed the Board. Hainline has duly perfected his appeal from the judgment of the district court.

For his first issue on appeal, Hainline argues that the statute under which the Board proceeded, K.S.A. 72-1383, is of no legal force and effect. To place this issue into context, it is necessary to set forth the following constitutional provision, statute, and regulation:

Kan. Const. art. 6, § 2(a):

"(a) The legislature shall provide for a state board of education which shall have general supervision of public schools, educational institutions and all the educational interests of the state, except educational functions delegated by law to the state board of regents. The state board of education shall perform such other duties as may be provided by law."

K.S.A. 72-1383:

"Any certificate issued by the state board of education or institutions under the state board of regents may be canceled by the state board of education in the manner provided by law, on the grounds of immorality, gross neglect of duty, annulling of written contracts with boards of education without the consent of the board which is a party to the contract, or for any cause that would have justified the withholding thereof when the same was granted."

K.A.R. 91-1-61:

"(a) Any certificate may be cancelled or revoked, suspended, or denied by the state board for the following reasons:

(1) Conviction of, or a plea of guilty for violation of any law punishable as a felony; or

(2) Evidence that a certificate holder has injured the health or welfare of a child through physical or sexual abuse or exploitation. For the purposes of this paragraph, a certified copy of a court record showing that a certificate holder was convicted in a state or federal court of the commission of an act involving the physical or sexual abuse, exploitation of a child, or any of the acts in subsection (a)(1) within the previous five years shall be considered sufficient evidence.

"(b) Cancellation or revocation or suspension of a certificate shall cancel, revoke or suspend all endorsements on the certificate. Cancellation or rev-

ocation of a certificate shall be permanent, subject to the reinstatement provisions in subsection d; suspension of a certificate shall be for a definite period of time."

Within this issue, Hainline makes three contentions:

1. The statute is not in harmony with the regulation and, as the constitutional provision is self-executing, the regulation takes priority over the statute.
2. The statute is unconstitutional.
3. The Board cannot disregard its own policy as expressed in the regulation.

The thrust of this issue is that the Kansas Constitution grants the Board the authority of general supervision over the schools and all the educational interests of the state (except those in the area of the State Board of Regents). K.S.A. 72-1383, it is argued, is not in harmony therewith and, accordingly, is of no force and effect. Additionally, the argument is made that the adoption of K.A.R. 91-1-61 operates to supplant the statute. We do not agree.

It is true that art. 6, § 2(a) of the constitution has been held to be self-executing, which means no supplementary legislation is needed to make it effective. *State, ex rel., v. Board of Education*, 212 Kan. 482, 511 P.2d 705 (1973). Where a constitutional provision is self-executing, the legislature may enact legislation to facilitate or assist in its operation, but whatever legislation is adopted must be in harmony with and not in derogation of the provisions of the constitution. 212 Kan. 482, Syl. ¶ 7.

K.S.A. 72-1383 is not in derogation of the constitutional provision. It does not reduce the Board's supervisory authority by delegating any part thereof to another entity. It does not require the Board to do or not do anything.

Hainline also argues that K.S.A. 72-1383 conflicts with K.A.R. 91-1-61, and the regulation, therefore, supersedes the statute. The Board argues that this would repeal the statute by implication and that such repeals are not favored. It cited *City of Salina v. Jaggers*, 228 Kan. 155, Syl. ¶ 2, 612 P.2d 618 (1980), wherein we held:

"Repeal by implication is not favored and acts will not be held to have been repealed by implication unless a later enactment is so repugnant to the provisions of the first act that both cannot be given force and effect."

This concept has even greater force when a later adopted regulation is urged to have repealed, by implication, a previously enacted statute.

The Board notes that it continued to exercise authority under K.S.A. 72-1383 after it adopted the regulation. The Board's position is that it considers the statute and the regulation as supplementary to each other. The Board's order herein actually combines the two. The reason for the Board's action was an act of immorality (from the statute), but the penalty imposed, suspension of Hainline's certificate for a fixed period, is grounded in the regulation. The statute speaks only of revocation of a certificate. We agree with the Board's position and find no merit in Hainline's argument in this regard.

Finally, Hainline argues the policy of the Board is expressed in the regulation. Hainline contends that the failure of the regulation to include immorality eliminates that ground as a cause for suspension of his certificate and that the final order herein is, accordingly, contrary to the Board's stated policy. We find no merit in this argument. There is nothing in the record to indicate that the Board, by adopting the regulation, was fixing a policy which was intended to replace or supersede the statute.

For his second issue, Hainline contends the suspension of his certificate deprives him of substantive due process. Although the precise contentions made in this issue are difficult to ascertain, the point appears to be that the Board was required to find that Hainline's felonious conduct impaired his ability to perform his job before the suspension could be imposed; that there must be a "nexus" between his conduct and job performance. Failure to find this nexus, according to Hainline, resulted in the deprival of his rights to substantive due process. The term nexus is used to denote the relationship between the complained-of conduct and job performance. The difficulty in applying this concept to the facts before us is that in the cases cited in support of this issue, noncriminal conduct gave rise to the sanctions.

In *Pickering v. Board of Education*, 391 U.S. 563, 20 L. Ed. 2d 811, 88 S. Ct. 1731 (1968), the Court held that a board of education could not dismiss a teacher for writing a letter to the editor that was critical of school board expenditures. The penalty

was being imposed by virtue of the teacher's exercise of the right of free speech.

In *Shelton v. Tucker*, 364 U.S. 479, 5 L. Ed. 2d 231, 81 S. Ct. 247 (1960), the Court held unconstitutional an Arkansas statute requiring teachers to disclose any and all organizations that they had been affiliated with in the past five years. The statute was struck down as impinging upon constitutionally protected conduct—free speech and freedom of association.

In *Schware v. Board of Bar Examiners*, 353 U.S. 232, 1 L. Ed. 2d 796, 77 S. Ct. 752 (1957), the Court considered a case in which a candidate for the New Mexico state bar was denied a license to practice for failure to demonstrate "good moral character." The basis for the board's denial was that Schware had belonged to subversive organizations, used aliases, and had been arrested.

The Court examined the facts of the case, which were that Schware had been interested in socialism, communism, and unionism in the 1930s, but that he quit the Communist Party in 1940 because he became disillusioned with it. Far from being anti-American, Schware had volunteered for service as a paratrooper during World War II and was eventually honorably discharged. Schware's only use of aliases was prior to his service in the army and was only to forestall anti-Jewish prejudices in getting and retaining a job. Schware had been arrested for suspicion of criminal syndicalism and violation of the Neutrality Act of 1917, but had never been convicted.

The Court said the question was one of (substantive) due process or equal protection: "A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." 353 U.S. at 239.

See *Konigsberg v. State Bar*, 353 U.S. 252, 1 L. Ed. 2d 810, 77 S. Ct. 722, *reh. denied* 354 U.S. 927 (1957). Using a different approach, the Court has looked to see if the suspension of a physician's license was "arbitrary or capricious." See *Barsky v. Board of Regents*, 347 U.S. 442, 98 L. Ed. 829, 74 S. Ct. 650 (1954).

In *Morrison v. State Board of Education*, 1 Cal. 3d 214, 82 Cal. Rptr. 175, 461 P.2d 375 (1969), the California State Board of Education had revoked the certificate of a teacher on grounds of moral turpitude. The teacher had been involved in a noncriminal homosexual relationship with another teacher who later reported the incident to the school board. The California court held that a showing needed to be made that retention of the teacher presented a significant danger of harm to students or fellow teachers. 1 Cal. 3d at 237. This appears to be one of the strongest "pro-nexus" cases.

But in a later case involving conduct that was both public and criminal, *Pettit v. State Board of Education*, 10 Cal. 3d 29, 109 Cal. Rptr. 665, 513 P.2d 889 (1973), *Morrison* was distinguished. In *Pettit* the female teacher engaged in several public acts of oral copulation with various members of a sex club. The court stated: "Even without expert testimony, the board was entitled to conclude that plaintiff's flagrant display indicated a serious defect of moral character, normal prudence and good common sense." 10 Cal. 3d at 35.

In *Kenai Peninsula Borough Bd. of Educ. v. Brown*, 691 P.2d 1034 (Alaska 1984), the teacher was dismissed for "immorality, which is defined as the commission of an act which, under the laws of the state, constitutes a crime involving moral turpitude." 691 P.2d at 1036 n. 1. The teacher had been convicted of diverting electricity. He argued in appealing his termination that there was no nexus between his conduct and his job. The Alaska court held:

"The finding that a crime involving moral turpitude has been committed raises at least a presumption that there is a nexus between the teacher's act and the teacher's fitness to teach. The legislature, in enacting certain criminal statutes, has established minimum acceptable moral standards for the state as a whole. If a teacher cannot abide by these standards his or her fitness as a teacher is necessarily called into question. Of course, during the hearing . . . the teacher may attempt to demonstrate that the Board should retain the teacher despite the finding of a crime involving moral turpitude." 692 P.2d at 1041.

See *Denton v. South Kitsap Sch. Dist.*, 10 Wash. App. 69, 72, 516 P.2d 1080 (1973) (holding that certain "immoral" acts inherently call into question a person's fitness to teach).

Hainline does not argue that burglary and theft involve some constitutionally protected right of conduct such as free speech or free association. We believe the *Kenai Peninsula* case represents a reasonable approach.

K.S.A. 72-8501 provides:

"It is the intent and purpose of the legislature that the practice of teaching and its related services, including school administration and supervisory services, shall be designated as professional services. Teaching and school administration are hereby declared to be professions in Kansas with all the similar rights, responsibilities, and privileges accorded other legally recognized professions."

Obviously, one of the goals of education is to instill respect for the law. Teachers are role models for their students. Hainline's burglary offense was publicized by the Wichita media. There is at least a presumption that the felonious conduct has sufficient relationship or nexus to Hainline's fitness to teach to warrant action by the Board herein. The fact that Hainline's employer, the Board of Education of U.S.D. 259, has been supportive of him may well have been a factor in the State Board's decision to suspend the certificate rather than revoke it, but that is irrelevant to the Board's power to act.

A certificate granted by the Board is certification statewide. Teaching is a profession as declared in K.S.A. 72-8501 subject to professional responsibilities. Burglary is a felony. A professional code of conduct which requires a person not to commit a felony can hardly be considered arbitrary or capricious. It would appear to be about as basic a requirement as can be imposed. Conviction of a felony, whether or not related to the practice of medicine, is grounds for revocation of a license issued by the Board of Healing Arts. K.S.A. 1990 Supp. 65-2836. Conviction of a felony is grounds for license revocation of an architect, land surveyor, or engineer. K.S.A. 74-7026. We have numerous cases disciplining attorneys for commission of a felony unrelated to the practice of law. For example, see *In re Laing*, 246 Kan. 334, 788 P.2d 284 (1990), and *In re Barritt*, 243 Kan. 519, 757 P.2d 730 (1988). The teaching profession, with its great influence on young people, certainly has no lesser justification for the discipline of a person within its ranks who has committed a felony.

We find this issue to be without merit.

For his next issue, Hainline contends suspension of his teaching certificate for conduct unrelated to his work violates his constitutional right to privacy.

In *Wishart v. McDonald*, 500 F.2d 1110, 1113-14 (1st Cir. 1974), the court considered whether a teacher's "right of privacy" was violated by revocation of his teaching certificate for conduct occurring outside of school. Wishart's certificate was revoked after he was repeatedly observed lewdly fondling a mannequin in his front yard. He argued the termination violated his right to privacy. The court said, "The right of privacy, even as advocated in Warren & Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193 (1890), may be surrendered by public display. The right to be left alone in the home extends only to the home and not to conduct displayed under the street lamp on the front lawn."

There is no right of privacy involved in the commission of a burglary, at least as far as the felon is concerned. The fact that Hainline ultimately entered into a diversion agreement is irrelevant. In the diversion agreement, Hainline admitted to facts constituting burglary. Felonies are public offenses. The issue is without merit.

For his final point, Hainline contends that the term "immorality," as used in K.S.A. 72-1383, is unconstitutionally vague. In this issue, Hainline relies primarily on *Burton v. Cascade School Dist. Union High Sch. No. 5*, 353 F. Supp. 254 (D. Or. 1973), *aff'd* 512 F.2d 850 (9th Cir.), *cert. denied* 423 U.S. 839 (1975), in which the court held that an Oregon statute allowing termination of a teacher's employment for reason of "immorality" was unconstitutionally vague. The court reasoned:

"Immorality means different things to different people, and its definition depends on the idiosyncracies of the individual school board members. It may be applied so broadly that every teacher in the state could be subject to discipline. The potential for arbitrary and discriminatory enforcement is inherent in such a statute." 353 F. Supp. at 255.

Burton was terminated for being a homosexual. No specific instances of wrongful conduct were alleged.

Most jurisdictions that have considered the constitutionality of similar statutes have upheld them. See, *e.g., Wishart*, 500 F.2d at 1116; *Morrison*, 1 Cal. 3d at 228-34; *Weissman v. Bd. of Educ.*,

190 Colo. 414, 422-24, 547 P.2d 1267 (1976); *Tomerlin v. Dade County School Board*, 318 So. 2d 159 (Fla. Dist. App. 1975).

The constitutionality of a statute is presumed and all doubts must be resolved in favor of its validity. Before the statute may be struck down, it must clearly appear the statute violates the constitution. It is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done. *Guardian Title Co. v. Bell*, 248 Kan. 146, 149, 805 P.2d 33 (1991).

Most challenges for vagueness are against criminal statutes.

"The test to determine whether a criminal statute is unconstitutional by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process." *State v. Meinert*, 225 Kan. 816, Syl. ¶ 2, 594 P.2d 232 (1979).

The statute here is not criminal.

"In determining constitutional challenges for vagueness, greater leeway is afforded statutes regulating business than those proscribing criminal conduct."

"A common-sense determination of fairness is the standard for determining whether a statute regulating business is unconstitutional for vagueness, *i.e.*, can an ordinary person exercising common sense understand and comply with the statute? If so, the statute is constitutional." *Guardian Title Co. v. Bell*, 248 Kan. 146, Syl. ¶¶ 3, 4.

See *Armored Services, Inc. v. City of Wichita*, 248 Kan. 136, 139, 804 P.2d 987 (1991).

The vagueness challenge here must be a limited one. The United States Supreme Court has repeatedly stated, "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550, 42 L. Ed. 2d 706, 95 S. Ct. 710 (1975). This means that the statute is judged on an "as-applied" basis. *Maynard v. Cartwright*, 486 U.S. 356, 361, 100 L. Ed. 2d 372, 108 S. Ct. 1853 (1988). See *Chapman v. United States*, 500 U.S. ____, 114 L. Ed. 2d 524, 540, 111 S. Ct. 1919, *reh. denied* ____ U.S. ____ (1991); *Hoff-*

*man Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 495 n.7, 71 L. Ed. 2d 362, 102 S. Ct. 1186 (1982); *United States v. Powell,* 423 U.S. 87, 92-93, 46 L. Ed. 2d 228, 96 S. Ct. 316 (1975); *United States v. Mazurie,* 419 U.S. at 550; *Palmer v. City of Euclid,* 402 U.S. 544, 29 L. Ed. 2d 98, 91 S. Ct. 1563 (1971); *United States v. National Dairy Corp.,* 372 U.S. 29, 32-33, 36, 9 L. Ed. 2d 561, 83 S. Ct. 594, *reh. denied* 372 U.S. 961 (1963).

Kansas has previously considered a similar claim of vagueness. In *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828 (1968), this court reviewed proceedings against a doctor for unprofessional conduct. The court discussed a statute which made "immoral . . . or dishonorable conduct" grounds for revocation. See K.S.A. 65-2836.

"It would indeed be difficult, not to say impractical, in carrying out the purpose of the act, for the legislature to list each and every specific act or course of conduct which might constitute such unprofessional conduct of a disqualifying nature. Nor does any such failure leave the statute subject to attack on grounds of vagueness or indefiniteness. Our statute makes no attempt to delineate what acts are included in the terms immoral or dishonorable conduct, which are also made grounds for revocation. The determination whether by common judgment certain conduct is disqualifying is left to the sound discretion of the board." 200 Kan. at 453-54.

In *Kansas State Board of Healing Arts v. Acker,* 228 Kan. 145, 612 P.2d 610 (1980), this court considered a claim that K.S.A. 65-2836 was vague. This court held that it was not vague, relying in part on *Foote.* This court also suggested that terms such as immoral, dishonorable, or unprofessional contemplate conduct which inherently shows that the person is incompetent to practice the profession. 228 Kan. at 150.

The term "immorality," as used in K.S.A. 72-1383, means such conduct that by common judgment reflects on a teacher's fitness to engage in his or her profession. Hainline testified at the suspension hearing that his immediate concern when he heard police in the furniture warehouse was that he would lose his job. Such a reaction would undoubtedly be a common one of any teacher in a like position. Commission of a felony is not an activity on the fringe of the term "immorality" or one arising solely from religious tenets. It is a criminal offense as defined by the legislature, subjecting a person convicted thereof to possible im-

prisonment. Adequate notice that such conduct was prohibited and within the term "immorality" is present and defeats any claim of vagueness as applied herein.

The judgment of the district court is affirmed.