NOT DESIGNATED FOR PUBLICATION

No. 122,553

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MICHAEL D. RILEY,
*Appellant*,

v.

KANSAS STATE BOARD OF HEALING ARTS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; PAUL C. GURNEY, judge. Opinion filed December 18, 2020.
Affirmed.

*Mark W. Stafford*, of Forbes Law Group, of Overland Park, for appellant.

*Courtney E. Cyzman*, deputy general counsel, and *Tucker L. Poling*, general counsel, Kansas
State Board of Healing Arts, for appellee.

Before GARDNER, P.J., BUSER and BRUNS, JJ.

PER CURIAM: The Kansas State Board of Healing Arts (Board) sanctioned
Michael D. Riley for his advertisements that used the term "pain free" and omitted his
name and chiropractic profession. Riley petitioned the district court for review, but it
denied his petition. Riley appeals, raising five claims: (1) the Board lacked substantial
evidence to support its order; (2) the Board erred in interpreting and applying the law; (3)
the Board failed to decide issues requiring resolution; (4) the Board's order was arbitrary
and capricious; and (5) the Board acted unconstitutionally. We affirm, finding that the

1

Board reasonably acted within its discretion with a proper factual and legal determination. We do not reach Riley's constitutional claim.

*Factual and Procedural Background*

Michael D. Riley has been a licensed chiropractor with the Board since 2001. He owns Renuva Back & Pain Center (Renuva) in Overland Park, Kansas.

In January 2018, the Board opened an investigation after Renuva advertised in the Johnson County Government magazine, Winter 2018 edition. The advertisement closed with the salutation: "We look forward to helping you become pain free! Sincerely, Dr. Michael Riley, D.C." The Board also reviewed an advertisement published in both the Fall 2017 and Spring 2018 editions of the Johnson County Government magazine. Under a section titled: "What does this offer include," the advertisements stated, "[a] thorough analysis of your exam findings so we can start mapping out your plan to being pain free."

During its investigation, the Board received a complaint about a June 2018 Kansas City Star advertisement. The advertisement explained Renuva's CoreCare treatment and its knee brace's ability to address knee pain. Yet Riley's name was absent, and it did not identify Renuva as a chiropractic clinic. The advertisement also explained that an initial appointment included "[a] thorough analysis of your examination findings so we can start mapping out your treatment plan to being pain free."

In November 2018, the Board investigator met with Riley and his business manager to discuss Riley's advertisements and the history of advertising complaints against him. Riley took responsibility for any wording used in printed or electric publications or advertisements. He affirmed he was aware it was a violation to solicit a treatment, process, or procedure that would result in the patient being pain free. But Riley did not think the wording he chose promised a pain free result. The investigator presented

2

Riley with scenarios showing how potential readers could interpret his advertisements and could expect Riley's treatment to cure their pain. Riley acknowledged that someone could make that interpretation.

Riley then agreed to redact or remove any advertisement using "pain free" language and not to make any promises, inferences, or illusions of a promise to be pain free. The investigator also encouraged Riley to ask an attorney to review his publication if he had questions about what he could not say. The investigator found Riley cooperative throughout their conversation. A few days later, Riley emailed the investigator confirming that he would ensure that his name and credentials were in every ad.

In April 2019, the Board received a January 2019 advertisement from the Wichita Eagle titled "Wichita Pain Clinic Offers Opioid-Free Pain Treatment." The advertisement explained Renuva's CoreCare treatment, and quoted Riley: "'At Renuva we believe there is a better way. Pain should not be accepted as part of the aging process; drugs and surgery are not your only options; quality of life is important and life should be enjoyed to the fullest—pain free.'"

The Board's disciplinary counsel petitioned the Board, claiming Riley's advertisements violated the Kansas Healing Arts Act (KHAA), K.S.A. 65-2801 et seq., through false or misleading advertisements. The petition alleged that Riley violated K.S.A. 65-2836 in multiple ways. The petition also listed Riley's three previous advertising violations:

- In 2007, under a consent order Riley signed, Riley agreed he had published a full-page advertisement in the Emporia Gazette that displayed a stop sign and implied that back pain could be stopped without surgery. It did not identify him or his profession. Riley agreed this advertisement violated K.S.A. 65-2836(d), as defined

3

by K.S.A. 65-2837(c), because his advertisement was false, misleading, or deceptive. The Board fined him $250.

- In 2014, the Board issued a summary order that required Riley to pay $2,000 for an advertisement stating patients could "'live pain free'" with the Lite Cure Laser. The Board found he committed unprofessional conduct as defined by K.S.A. 65-2837(b)(1) and he used a fraudulent or false advertisement as prohibited by K.S.A. 65-2836(d).

- In 2017, Riley signed a consent order agreeing he failed to identify himself as a chiropractor in multiple places on Renuva's website. Riley agreed he violated K.S.A. 65-2836(b) by failing to adhere to K.S.A 65-2885, violated K.S.A. 65-2836(b), as defined by K.S.A. 65-2837(b)(12), and violated K.S.A. 65-2836(f). The Board fined Riley $5,000.

Riley did not respond to the petition and presented no exhibits or briefs for the Board's consideration.

The Board held an administrative hearing in June 2019, at which Riley appeared pro se. Riley stated that he felt like he was being railroaded. He was licensed in six states and had used the same advertisements in each state, but Kansas was the only state that had questioned his advertisements. He saw no difference between his advertisements and a gastric bypass surgeon's advertisement promising that a patient would lose weight—which he thought the Board had never penalized. Riley asserted that his advertisements did not guarantee that his patients would be pain free. And he did not understand that the Board considered the term "pain free" to be prohibited language until after speaking with the investigator.

The Board adopted the factual findings in the amended petition and concluded that Riley had violated three subsections of the statute: soliciting professional patronage by using fraudulent or false advertisements (K.S.A. 65-2837[b][1]); engaging in conduct that

4

is likely to deceive, defraud, or harm the public (K.S.A. 65-2837[b][12]); and making a false or misleading statement regarding his skill or the efficacy or value of the treatment or remedy prescribed by licensee (K.S.A. 65-2837[b][13]).

As for Riley's sanction, the Board noted that his history of similar violations outweighed any consideration of his cooperation with its investigator and his willingness to modify his advertisements. The Board's Final Order suspended Riley's license for 90 days, fined him $7,500, and required ethics education and an examination.

The Board granted Riley's motion to stay the Final Order pending completion of judicial review. And Riley, represented by counsel, petitioned the district court for judicial review. Riley raised five claims for relief under K.S.A. 77-621(c), similar, if not identical, to the claims he raises now on appeal.

But the district court denied Riley's petition, holding:

> "Substantial evidence supports the Board's determination that petitioner violated the Healing Arts Act when its advertisements promised patients a 'pain free' outcome. The Board did not misinterpret the Act and resolved all pending issues before it. As a result, it did not act in an arbitrary or capricious manner. Additionally, the First Amendment does not protect misleading commercial speech."

Riley timely appeals.

*Analysis*

*The Board's Disciplinary Oversight of Unprofessional Conduct*

Our Legislature has granted the Board authority to license and regulate all practitioners of the healing arts in Kansas. K.S.A. 65-2812. The practice of chiropractic

5

falls under the authority of the Board. K.S.A. 65-2802; K.S.A. 65-2871. That practice is a privilege, not a right, and regulating that practice entails public policy determinations the Board makes:

> "[T]he practice of the healing arts is a privilege granted by legislative authority and is not a natural right of individuals, it is deemed necessary as a matter of policy in the interests of public health, safety and welfare, to provide laws and provisions covering the granting of that privilege and its subsequent use, control and regulation to the end that the public shall be properly protected against unprofessional, improper, unauthorized and unqualified practice of the healing arts and from unprofessional conduct by persons licensed to practice under this act." K.S.A. 65-2801.

The Board may revoke, suspend, or limit a license, publicly censure a licensee, or place a licensee on probation upon finding a licensee violated any provision of K.S.A. 65-2836. Subsection (b) of that statute allows the Board to discipline a licensee for "an act of unprofessional or dishonorable conduct or professional incompetency." The Board found that Riley violated K.S.A. 65-2836(b), as defined by K.S.A. 65-2837(b)(1), (12), (13):

> "(b) 'Unprofessional conduct' means:
>
>     "(1) Solicitation of professional patronage through the use of fraudulent or false advertisements, or profiting by the acts of those representing themselves to be agents of the licensee.
>
>     . . . .
>
>     "(12) Conduct likely to deceive, defraud or harm the public.
>
>     "(13) Making a false or misleading statement regarding the licensee's skill or the efficacy or value of the drug, treatment or remedy prescribed by the licensee or at the licensee's direction in the treatment of any disease or other condition of the body or mind."

6

K.S.A. 65-2837(c) defines "false advertisement":

"'False advertisement' means any advertisement that is false, misleading or deceptive in a material respect. In determining whether any advertisement is misleading, there shall be taken into account not only representations made or suggested by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertisement fails to reveal facts material in the light of such representations made."

*Kansas Judicial Review Act*

A licensee may challenge a final order of the Board under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. Riley does so here. Under KJRA, the licensee bears the burden of showing the invalidity of an agency action. K.S.A. 77-621(a)(1); *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 953, 335 P.3d 1178 (2014). The relevant statute lists eight circumstances under which a court must grant relief. Riley argues four of them apply:

"(3) the agency has not decided an issue requiring resolution;
"(4) the agency has erroneously interpreted or applied the law;
. . . .
"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or
"(8) the agency action is otherwise unreasonable, arbitrary or capricious." K.S.A. 77-621(c).

Appellate courts exercise the same statutorily limited review of the agency's action as does the district court. Under the KJRA, we consider this appeal from the district court as if Riley's petition for review of the Board's decision had been originally filed with us. *In re Tax Appeal of Fleet*, 293 Kan. 768, 776, 272 P.3d 583 (2012); *Carlson Auction Service, Inc. v. Kansas Corporation Comm'n*, 55 Kan. App. 2d 345, 349, 413 P.3d 448 (2018). Riley's burden is to show the Board erred. See K.S.A. 77-621(a)(1); *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010). We independently determine legal issues, without deference to the Board's interpretation. See *Dirshe v. Cargill Meat Solutions Corp.*, 53 Kan. App. 2d 118, 119-20, 382 P.3d 484 (2016).

*Does Substantial Evidence Support the Board's Order?*

Riley first argues that no evidence supports the Board's conclusion that the advertisements were deceptive or misleading and no evidence shows that anyone was deceived or misled.

For this issue, we must determine whether the Board's factual findings are supported by substantial evidence in light of all evidence of record. See K.S.A. 77-621(c)(7), (d); *Sierra Club v. Moser*, 298 Kan. 22, 62-63, 310 P.3d 360 (2013). This analysis requires us to: (1) review evidence both supporting and detracting from an agency's findings; (2) examine the presiding officer's credibility determinations, if any; and (3) review the agency's explanation as to why the evidence supports its findings. K.S.A. 77-621(d); *Board of Cherokee County Comm'rs v. Kansas Racing & Gaming Comm'n.*, 306 Kan. 298, 326, 393 P.3d 601 (2017). Substantial evidence is legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). In reviewing the evidence, we do not reweigh the evidence, or engage in de novo review, or make new "veracity" determinations. K.S.A. 77-621(d). We also determine whether cross-examination or other evidence has so undermined the evidence supporting the agency's

8

decision as to render it insufficient to support the agency's conclusion. *Buchanan v. JM Staffing*, 52 Kan. App. 2d 943, 948, 379 P.3d 428 (2016).

Riley is correct that no evidence shows that his advertisements deceived or misled anyone. But the statutes do not require that showing. Instead, each statute focuses on the unprofessional conduct of the licensee. See K.S.A. 65-2837(b)(1), (12), and (13).

We turn to Riley's argument that no evidence supports the Board's conclusion that the advertisements were deceptive or misleading. We recognize that "matters of administrative policy will generally be left to the discretion of the administrative agency if they fall within its field of expertise." *Graves Truck Line, Inc. v. Kansas Corporation Comm'n*, 215 Kan. 565, 572, 527 P.2d 1065 (1974); see *Farmland Industries, Inc. v. Kansas Corporation Comm'n*, 24 Kan. App. 2d 172, 176, 943 P.2d 470 (1997). And "'[t]he determination whether by common judgment certain conduct is disqualifying is left to the sound discretion of the board.'" *Hainline v. Bond*, 250 Kan. 217, 227, 824 P.2d 959 (1992) (quoting *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 454, 436 P.2d 828 [1968]).

The Board expressly relied on the advertisements to support its finding of Riley's violations. We detail the advertisements here. The first was published in the Johnson County Government Magazine Winter 2018 edition. The title of the advertisement was "Overland Park Doctor Offers New Treatment For Chronic Pain." It began: "My name is Dr. Michael Riley, D.C., Founder of Renuva Back & Pain Center, and I want to help you determine if our CoreCareTM treatment protocol is right for you." The advertisement then described CoreCare, which includes Photobiomodulation, multidisciplinary rehabilitation, and spinal manipulation. Under a section titled: "Could this Non-Invasive, Natural Treatment be the Answer to Your Pain?" the advertisement stated: "Remember what it was like before you had these problems—when you were pain free and could enjoy everything life had to offer? It can be that way again. Don't neglect your problem

9

any longer—don't wait until it's too late and the damage is irreversible." The advertisement closed with a salutation:  "We look forward to helping you become pain free! Sincerely, Dr. Michael Riley, D.C."

The second advertisement was published in both the Fall 2017 and Spring 2018 editions of the Johnson County Government magazine. The advertisement introduced Riley as a chiropractor and as the founder of Renuva and explained CoreCare. Under a section titled:  "What does this offer include," the advertisements stated, "[a] thorough analysis of your exam findings so we can start mapping out your plan to being pain free. If you're not a candidate for CoreCare, I promise to tell you."

The third advertisement sprang from a complaint the Board received about a June 2018 Kansas City Star advertisement. That advertisement explained Renuva's CoreCare treatment and its knee brace's ability to address knee pain. Yet the advertisement neither contained Riley's name nor identified Renuva as a chiropractic clinic. It explained that an initial appointment included "[a] thorough analysis of your examination findings so we can start mapping out your treatment plan to being pain free."

The fourth advertisement was published in January 2019 by the Wichita Eagle titled, "Wichita Pain Clinic Offers Opioid-Free Pain Treatment." The advertisement explained Renuva's CoreCare treatment and quoted Riley as saying:  "'At Renuva we believe there is a better way. Pain should not be accepted as part of the aging process; drugs and surgery are not your only options; quality of life is important and life should be enjoyed to the fullest—pain free.'"

The advertisements themselves provide relevant and substantial evidence reasonably supporting the Board's conclusion that Riley violated the KHAA. All the advertisements included the term "pain free," and the Kansas City Star advertisement omitted Riley's name and failed to identify Renuva as a chiropractic clinic. And the

10

record lacks any evidence that would call these advertisements into question. As the Board determined, the "pain free" language in Riley's advertisements met this statute because Riley was unable to guarantee a pain free life as a result of his treatment. The implicit assumption behind the Board's determination is that a licensee cannot, in reality, guarantee a pain-free outcome and to do so misleads the public. This is a policy decision that we grant deference to. See *Hainline*, 250 Kan. at 227; *Farmland Industries*, 24 Kan. App. 2d at 176. Although Riley disagrees that the advertisements are false or misleading, the record supports the Board's contrary conclusion that the advertisements violated K.S.A. 65-2836(b).

*Did the Board Err in Interpreting and Applying the Law?*

Riley next argues that the Board incorrectly applied K.S.A. 65-2837(c). He asserts the Board made a legal error in concluding that his advertisement was false or misleading only in some respect, instead of in a "material" respect.

Riley is correct that to violate the KHAA, an advertisement must be materially false, misleading, or deceptive. The relevant statute defines a false, misleading, or deceptive advertisement as one that is materially so:

> "'False advertisement' means any advertisement that is false, misleading or deceptive in a *material* respect. In determining whether any advertisement is misleading, there shall be taken into account not only representations made or suggested by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertisement fails to reveal facts material in the light of such representations made." (Emphasis added.) K.S.A. 65-2837(c).

Black's Law Dictionary defines "material" as "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential." Black's Law Dictionary 1170 (11th ed. 2019). As applied to the statute above, a false advertisement is

one that is (1) false, misleading, or deceptive in a manner that would affect a person's decision-making; (2) significantly false, misleading or deceptive; or (3) essentially false, misleading, or deceptive.

Riley claims the Board wrongly concluded that the advertisement must be misleading only in "some" respect instead of in a material respect. Riley bases his interpretation on this statement in the Board's order:

> "The Board notes that the Healing Arts Act defines 'false advertisement' as inclusive of advertisement [*sic*] that is found to be *misleading in some respect*. K.S.A. 65-2837(c). The Act directs that '[i]n determining whether any advertisement is misleading, there shall be taken into account not only representations made or suggested by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertisement fails to reveal facts material in the light of such representations made.' *Id*." (Emphasis added.)

But the Board's statement is ambiguous—it has two reasonable interpretations. Riley suggests one. But another is that the Board's use of the term "in some respect" refers to the way the misleading representation was made—either by communication or by omission of material facts. We find this latter interpretation to be reasonable, and more likely, given the context as clarified by the Board's explanatory sentence right after the ambiguous statement. We thus disagree with Riley's interpretation that the Board lowered the standard of falsity and ignored the definition of "false advertisement" by finding that definition includes advertisements that are "misleading in some respect." We find no legal error.

### *Did the Board Fail to Decide an Issue that Required Resolution?*

Riley next argues that the Board failed to make four determinations, contrary to its duty under K.S.A. 77-621(c)(3):

12

1. "It did not determine whether the complained-of language in the advertisements was material."
2. "It did not determine the likelihood that a person actually would be deceived, defrauded, or harmed."
3. "With one exception, it did not identify the material that the advertisements failed to state."
4. "And, it did not state what was false regarding Dr. Riley's skill or the efficacy of his treatment."

But the level of specificity Riley seeks is not required by this statute. Instead, courts grant relief under this statute when an agency fails to address a general claim or issue. See *Matter of Protest of Emil Liston Foundation*, 13 Kan. App. 2d 353, 355, 771 P.2d 77 (1989) (invoking K.S.A. 77-621[c][3] to decide whether foreclosure court's decision barred later tax protest when agency expressly declined to decide the issue); *Berberich v. U.S.D. 609 S.E. Ks. Reg. Educ. Center*, No. 97,463, 2007 WL 3341766, at *2 (Kan. App. 2007) (unpublished opinion) (vacating Workers Compensation Board decision under K.S.A. 77-621[c][3] when agency failed to provide written decision from request for post-award benefits); *Ney v. Kansas Employment Sec. Bd. of Review*, No. 92,212, 2004 WL 3048958, at *5 (Kan. App. 2004) (unpublished opinion) (remanding to agency under K.S.A. 77-621[c][3] for fact-finding and to "address fully" claimant's good-faith argument). We find no comparable omission here.

The only issue that required resolution was whether Riley violated the statutes raised in the amended petition and what the appropriate sanctions would be. The Board fulfilled the dictates of K.S.A. 77-621(c)(3) by concluding that Riley violated K.S.A. 65-2836(b) in three separate ways, and by specifying Riley's violations and supporting its legal conclusions with factual findings in its written decision. We find no unresolved issue or claim that the Board failed to address.

13

But even if we consider the level of specificity Riley desires, we find that the Board did not fail to make any "determinations." First, the Board found that Riley's advertisements were false, deceptive, or misleading in a material respect. And it explained that Riley's omissions of his name and his profession in Exhibit 5, the Kansas City Star advertisement, were material omissions within the definition of K.S.A. 65-2837(c). The Board reasonably concluded that all the advertisements violated the KHAA because they contained the term "pain free."

Second, none of the statutes Riley violated requires an actual showing of fraud or deception. Instead, each section focuses on the licensee's conduct without requiring actual harm. See K.S.A. 65-2836(b)(1), (12), and (13).

Third, the Board determined that Riley omitted his name and his profession in the Kansas City Star advertisement—the "one exception" Riley mentions in his brief.

And, fourth, K.S.A. 65-2837(b)(13) provides that a statement can be false or misleading in regard to "the licensee's skill or the efficacy or value of the drug, treatment or remedy prescribed by the licensee or at the licensee's direction in the treatment of any disease or other condition of the body or mind." The Board found that the "pain free" language in Riley's advertisements violated this statute because Riley was unable to guarantee a pain free life as a result of his treatment.

Although the Board may not have stated those findings as expressly as Riley desires, the Board did not fail to make a determination contrary to its duty under K.S.A. 77-621(c)(3).

14

*Was the Board's Order Unreasonable, Arbitrary, or Capricious?*

Riley next argues that the Board unreasonably interpreted his advertisements to make or imply a promise to be pain free. Riley asserts that, given the context of the advertisements, a pain free guarantee reading would "not be logical." He also argues that it was unreasonable for the Board to require him to place his name and profession on advertisements because no law requires him to do so.

"'Essentially, the test under K.S.A. 77-621(c)(8) determines the reasonableness of the agency's exercise of discretion in reaching its decision based upon the agency's factual findings and the applicable law.'" *Via Christi Hospitals Wichita, Inc. v. Kan-Pak*, 310 Kan. 883, 891, 451 P.3d 459 (2019). A rebuttable presumption of validity attaches to all actions of an administrative agency. The burden of proving arbitrary and capricious conduct lies with the party challenging the agency's actions. *Sierra Club*, 298 Kan. at 47.

Our Legislature has given the Board wide discretion to determine whether certain conduct is unprofessional conduct. See *Hainline*, 250 Kan. at 227; *Foote*, 200 Kan. at 454. "Where substantial evidence is presented that supports a finding of a violation of the KHAA, Board members are entitled and expected to rely on their own expertise and experience in making these decisions." *Hart v. Kansas Board of Healing Arts*, 27 Kan. App. 2d 213, 218, 2 P.3d 797 (2000).

The Board reasonably determined that the "pain free" language in Riley's advertisements violated the KHAA. Riley's Johnson County Government magazine Winter 2018 edition advertisement asked the reader if CoreCare could "be the Answer to [their] Pain?" It then stated that they could be pain free again and "enjoy everything life had to offer." And the statements: "We look forward to helping you become pain free!" and "mapping out your plan to being pain free" imply that a pain free life results from the treatment. Riley's advertisements are unconditional and do not limit the extent of pain

15

relief that a qualifying person could obtain. Rather than promising "pain relief" or "pain reduction," Riley's advertisements state that he can help a person become "pain free." Given their contexts, it is reasonable to conclude these uses of the term "pain free" would mislead a patient into thinking Riley's treatment would produce a pain free life. "The licensor of healing arts professionals has the right and the duty to demand strict adherence to truthful advertising that is verifiable." *Bolton v. Kansas State Bd. of Healing Arts*, 473 F. Supp. 728, 734 (D. Kan. 1979). Although Riley disagrees with the Board's interpretation of his advertisements, he fails to show that its interpretation was arbitrary or unreasonable.

The Board was also reasonable in finding Riley violated the KHAA by failing to include his name or medical practice in the Kansas City Star advertisement. K.S.A. 65-2837(c) states that an advertisement may be misleading to "the extent to which the advertisement fails to reveal facts material in the light of such representations made." The Board may decide that licensees should include their name and profession in all advertisements. See *Hainline*, 250 Kan. at 227; *Hart*, 27 Kan. App. 2d at 218. The Board so decided here. Riley was on notice of that requirement as early as 2007 and as recently as 2017 when he signed consent orders to remedy his prior omissions of his name and profession in his advertisements. So it is immaterial that no statute requires an advertisement to include one's name and profession.

Neither was the Board's decision capricious. The Board had previously sanctioned Riley for nearly identical violations. The record of Riley's prior violations shows that the Board has consistently determined that "pain free" is prohibited language and that the advertisements must include the licensee's name and profession. Riley fails to show otherwise.

16

*Did the Board's Order Violate Riley's Rights Under the First Amendment to the United States Constitution?*

Riley argues that the Board's Final Order violated the freedom of speech clause of the First Amendment to the United States Constitution. His concern is "that the Board had zero tolerance for [the phrase 'pain free'], even though the phrase is not false, deceptive or misleading, the phrase is not specifically prohibited by a provision of law, and based upon that intolerance punished [him] for engaging in protected commercial speech."

Riley argues his advertisements were not misleading for two reasons:  (1) because no evidence showed that the advertisements misled anyone; and (2) a reasonable patient would not think the advertisements, when read in context, guaranteed a pain free result. In other words, he argues his advertisements were not actually misleading or inherently misleading, but only potentially misleading. And citing *In re R.M.J.*, 455 U.S. 191, 203, 102 S. Ct. 929, 71 L. Ed. 2d 64 (1982), he argues that the Board has failed to apply the governing legal test for protected commercial speech set forth in *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 561, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980). Thus, he concludes the Board acted unconstitutionally.

Riley challenges only the constitutionality of the Board's decision about the term "pain free." He does not challenge the constitutionality of the Board's order that he violated K.S.A. 65-2836(b) by failing to disclose material facts in his June 2018 Kansas City Star advertisement. And we have decided above that the Board did not err in so finding. "Appellate courts generally avoid making unnecessary constitutional decisions. Thus, where there is a valid alternative ground for relief, an appellate court need not reach constitutional challenges to statutes." *Wilson v. Sebelius*, 276 Kan. 87, 91, 72 P.3d 553 (2003). We find it unnecessary to address Riley's constitutional challenge, as we

could uphold the Board's decision based solely on Riley's omissions, rather than on the misrepresentations that Riley contends are protected speech.

Alternatively, Riley fails to show that his advertisements are commercial speech protected by the First Amendment. The First Amendment does not extend to commercial speech that is fraudulent, deceptive, or misleading. See *Edenfield v. Fane*, 507 U.S. 761, 768, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993); *State ex rel. State Bd. of Healing Arts v. Thomas*, 33 Kan. App. 2d 73, 85, 97 P.3d 512 (2004). Because we have affirmed the Board's findings that Riley's advertisements are materially false or misleading, Riley cannot make the necessary predicate showing for his First Amendment claim.

Affirmed.