(869 P.2d 748)
No. 68,971

JOHN R. SMITH, *Appellant,* v. DOUGLAS J. MILFELD, M.D., and BADR IDBEIS, M.D., *Appellees.*
Petition for review denied 253 Kan. 861 (1993).

Opinion filed August 20, 1993.

*Andrew W. Hutton, Derek S. Casey,* and *Donald A. McKinney,* of Michaud, Hutton & Bradshaw, of Wichita, for appellant.

*Randy J. Trout*and *Donald N. Peterson III,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, for appellee.

Before BRAZIL, P.J., LARSON and GERNON, JJ.

LARSON, J.: In this medical malpractice case, John R. Smith appeals from the trial court's grant of summary judgment in favor of Douglas J. Milfeld, M.D., and Badr Idbeis, M.D.

The trial court refused to admit the testimony of Smith's expert medical witness and ruled that without such testimony, Smith would be unable to establish an essential element of his claim.

Dr. Milfeld, with Dr. Idbeis' assistance, performed corrective heart surgery on Smith to repair an atrial septal defect (ASD). Later the same day, additional surgery was performed to ligate and cauterize "bleeders."

Following surgery, Smith's voice became very hoarse and harsh in sound. Smith was diagnosed as suffering from a damaged or destroyed left recurrent laryngeal nerve, causing vocal cord paralysis.

Smith retained the services of Julius H. Jacobson, M.D., a board certified vascular and thoracic surgeon who is licensed to practice medicine in Maryland and New York. After Smith filed suit alleging Milfeld and Idbeis were negligent, the trial court held Dr. Jacobson's opinion would not be allowed to be considered because it focused only on the results of Smith's surgery.

The trial court held that "if called, Dr. Jacobson would be found qualified . . . to testify regarding whether defendants' handling of plaintiff's surgery was a deviation from [the] standard of care." Dr. Jacobson testified there is no literature linking dam-

age to the left recurrent laryngeal nerve to an ASD repair and Smith's injury was clearly the result of a deviation from the appropriate standard of care.

Smith appeals. We reverse.

The underlying basis for our decision is grounded in our scope of review of grants of summary judgment:

"A motion for summary judgment under the provisions of K.S.A. 60-256(c) is to be sustained only where the record conclusively shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In considering such a motion the movant's adversary is entitled to the benefit of all reasonable inferences and doubts that may be drawn from the facts under consideration. Where the facts presented in the motion are subject to conflicting interpretations or reasonable persons might differ as to their significance, summary judgment is improper. It is only when it can be said that·reasonable persons could reach but one conclusion from the same evidence that an issue may be decided as one of law. Summary judgment should never be granted merely because the court may believe movant will prevail if the action is tried on the merits."

"An appellate court should read the record in the light most favorable to the party against whom summary judgment was entered. It should take such party's allegations as true, and it should give him the benefit of the doubt when his assertions conflict with those of the movant. Factual inferences tending to show triable issues must be considered in the light most favorable to the existence of those issues. If there is a reasonable doubt as to the existence of fact, a motion for summary judgment will not lie. Moreover, pleadings and documentary evidence must be given a liberal construction in favor of the party against whom the motion is directed." *Busch v. City of Augusta,* 9 Kan. App. 2d 119, Syl. ¶¶ 2, 3, 674 P.2d 1054 (1983).

See *Patterson v. Brouhard,* 246 Kan. 700, 702-03, 792 P.2d 983 (1990).

The introduction of opinion or expert testimony in a medical malpractice case is controlled by K.S.A. 1992 Supp. 60-3412, considered in the light of K.S.A. 60-456. Dr. Jacobson's qualifications are not at issue here because the trial court specifically found him qualified. His testimony was denied consideration solely because it was "result oriented."

Our Supreme Court has held that "[n]egligence is never presumed, and may not be inferred merely from a lack of success or an adverse result from treatment. [Citation omitted.] The plaintiff in a medical malpractice case bears the burden of showing not only the doctor's negligence, but that the negligence caused

the injury." *Bacon v. Mercy Hosp. of Ft. Scott,* 243 Kan. 303, 307, 756 P.2d 416 (1988). Expert testimony is often "required in medical malpractice cases to establish the accepted standard of care and to prove causation." 243 Kan. at 307. Accord *St. Francis Regional Med. Center, Inc. v. Hale,* 12 Kan. App. 2d 614, 618, 752 P.2d 129 (1988).

Drs. Milfeld and Idbeis rely on the argument that "[a] physician is not a guarantor of good results, and civil liability does not arise merely from bad results, nor if bad results are due to some cause other than his treatment." *Goheen v. Graber,* 181 Kan. 107, 112, 309 P.2d 636 (1957). They also contend that Smith failed to establish their treatment departed from the appropriate standard of care.

In the present case, Dr. Jacobson clearly stated he was more certain than to a reasonable degree of medical probability that the defendants' actions damaged or destroyed Smith's recurrent laryngeal nerve. Dr. Jacobson further testified the injury occurred during one or the other of the two surgeries. In a letter from Jacobson to Smith's counsel, Jacobson opined:

"One cannot tell from the records whether [the nerve] was cut or destroyed during the course of cauterizing a bleeder or even possibly pulled upon and damaged during the course of retraction and damaged in this way. . . .

". . . A left vocal cord paralysis occurred secondary to injury of the left recurrent laryngeal nerve during one or the other of these procedures. This is a deviation from good medical practice and should not have occurred."

The trial court placed undue emphasis on a bad result being the basis for the expert medical witnesses' opinion. In fact, a bad result (injury or damage) is an essential part of each and every tort action. See *Durflinger v. Artiles,* 234 Kan. 484, 488, 673 P.2d 86 (1983).

The defendants cite *Webb v. Lungstrum,* 223 Kan. 487, 575 P.2d 22 (1978), to reiterate the rule that there is no presumption of negligence from the fact of an injury or an adverse result. This is a correct statement, but *Lungstrum* does not aid the defendants either factually or legally. *Lungstrum* discussed the common knowledge exception to the rule in medical malpractice cases that expert medical testimony is ordinarily required to establish negligence, but the decision there was based on plaintiff's expert testifying the doctor was not negligent because he handled the

injury diligently and responded well to the complication which arose. In the present case, Dr. Jacobson clearly testified that Smith's injury was the result of a deviation from the appropriate standard of care.

To require an expert witness to pinpoint the exact procedure that was negligently performed would often be to require something beyond the ability of any expert medical witness who has not witnessed everything which occurred during the surgery. Such is not required in order for an expert to give his or her opinion that a clear deviation from the appropriate standard of care occurred or that a doctor's actions were the proximate cause of an injury.

Further, our Supreme Court has stated that once the trial court has determined a witness is qualified to testify as an expert witness, "the court cannot regulate the factors or mental processes used by the expert in reaching his opinion or conclusion on the case." *Pope v. Ransdell*, 251 Kan. 112, 123, 833 P.2d 965 (1992). The court also noted the "factors and mental processes used by the expert 'can only be challenged by cross-examination testing the witness' credibility.'" 251 Kan. at 123. In the present case, the trial court "recognize[d] that if called, Dr. Jacobson would be found qualified, based on his education and experience, to testify regarding whether defendants' handling of plaintiff's surgery was a deviation from standard of care." The trial court's refusal to admit the testimony implicitly challenges the factors and mental processes used by Jacobson.

Testing Dr. Jacobson's testimony as we are required on appellate review of the granting of a summary judgment motion, we cannot agree that his statements failed to identify any specific departure from the standard of care. Dr. Jacobson opined that Smith's recurrent laryngeal nerve could have been severed by (1) lacerating the nerve; (2) suturing the nerve; (3) stretching the nerve; (4) stretching the nerve with a retractor; (5) electrocuting by a cautery scapla; or (6) by using an improper point for aortic cannulation. Dr. Jacobson further testified that any of these misdeeds would be a deviation from standard medical practice.

A similar set of circumstances resulted in a verdict in favor of doctors in a malpractice case in *Tatro v. Lueken*, 212 Kan. 606, 512 P.2d 529 (1973). There, the unfortunate result was narrowed

to three possible causes: improper stitching, improper clamping, or an abscess. The defendant doctors specifically testified that neither of the first two of the possible causes occurred, leaving only the third, which would not have been the result of negligence. The issue was submitted to a jury that believed the treating physicians, and malpractice was not found. 212 Kan. at 609, 615.

Smith cites three cases where the laryngeal nerve was damaged but which the trial court found not to be persuasive. We recognize these cases from Alaska, Michigan, and California are not controlling in Kansas but are entitled to consideration.

In *Patrick v. Sedwick*, 391 P.2d 453 (Alaska 1964), damage occurred to the plaintiff's laryngeal nerve during a thyroidectomy. The Alaska Supreme Court found that the plaintiff had established a prima facie case of negligence and that a physician could not rely upon lack of evidence in the medical records as a defense to the charge of negligence.

In *McPhee v. Bay City Samaritan Hospital*, 10 Mich. App. 567, 159 N.W.2d 880 (1968), a woman's voice, which was normal prior to surgery, was afterwards hoarse and harsh. It was not required that the presence of a "severance" or "cut" of the laryngeal nerve be shown because expert testimony indicated the injury was inflicted during the thyroidectomy. The testimony was deemed admissible, and the jury determined the weight to be accorded to that testimony along with other evidence it heard.

Finally, in *Mayers v. Litow*, 154 Cal. App. 2d 413, 316 P.2d 351 (1957), expert medical opinion testimony was properly admitted that a recurrent laryngeal nerve had been severed during surgery and that severance of this nerve would immediately produce some paralysis of the vocal cord.

Dr. Jacobson's opinion is not speculative merely because there is more than one possible cause of injury. In *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643 (10th Cir. 1991), the 10th Circuit relied on the Kansas Supreme Court decision in *Farmers Ins. Co. v. Smith*, 219 Kan. 680, 549 P.2d 1026 (1976), in reaching the conclusion that expert testimony is not improper even if there is more than one possible cause of injury. Dr. Jacobson's testimony may not be based on a single known action, but his con-

clusions reached by inferences or induced by logical elimination are not rendered inadmissible.

Testing the trial court's ruling in the manner we are required to do on a motion for summary judgment, we reverse the trial court's ruling and remand for trial.

Reversed and remanded.