(2 P.3d 797)

No. 83,155

DILLIS L. HART, M.D., APPELLANT, v. THE BOARD OF HEALING ARTS OF THE STATE OF KANSAS, *Appellee*.

Opinion filed March 17, 2000.

*Thomas A. Wood*, of Wichita, for the appellant.

*Mark W. Stafford*, general counsel, for the appellee.

Before BRAZIL, C.J., PIERRON, J., and WAHL, S.J.

PIERRON, J.: Dillis L. Hart, M.D., appeals an order from the Kansas Board of Healing Arts (Board) limiting his license to practice medicine and imposing a civil fine. The district court affirmed the Board's order. Dr. Hart argues: (1) There was not substantial competent evidence to support the Board's order; (2) the presiding

officer engaged in unlawful procedures; (3) K.S.A. 1999 Supp. 65-2836(s) is unconstitutional; (4) the limitations placed on his license were arbitrary and capricious; (5) and the Board acted beyond its jurisdiction by entering a fine.

Dr. Hart is a licensed physician in Kansas. The Board instituted disciplinary proceedings against him, seeking to revoke, suspend, or otherwise limit his medical license. The Board brought 12 counts against Dr. Hart for violations of the Kansas Healing Arts Act (KHAA), K.S.A. 65-2801 *et seq.* The basis for the violations involved his treatment of six patients, P.G., L.C., V.M., M.P., B.W., and J.M.

The Board conducted an extensive hearing. It heard expert testimony from Dr. Benson Powell. Dr. Hart did not call any experts to refute Dr. Powell's testimony. Instead, he offered his own testimony concerning his treatment of the patients. The Board concluded that Dr. Hart repeatedly failed to adhere to the applicable standard of care when providing medical services to the patients in question.

Specifically, the Board found that for all six patients, Dr. Hart had performed surgery without sufficient studies, evaluations, or findings to justify surgery, and/or had performed excessive surgery. The Board found he had managed post-operative care in a manner not consistent with standard practice when removing the nasogastric tube immediately after surgery and had failed to properly document necessary patient information in the case of patients L.C. and J.M. The Board also found that Dr. Hart had been subjected to sanctions and/or disciplinary actions at two hospitals.

In setting the restrictions on Dr. Hart's license, the Board agreed with the analysis of Dr. Powell that Dr. Hart's problems were not with his technical surgical skills, but rather with his professional judgment. Consequently, the Board set forth multiple limitations on his license to supplement the exercise of his judgment but did not remove him from the practice of medicine.

Dr. Hart appealed the Board's decision to the district court, which affirmed the Board's decision.

The standard of review for examining the decision of an administrative agency is controlled by the Act for Judicial Review and

Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* Dr. Hart raises arguments under several subsections of K.S.A. 77-621(c).

First, Dr. Hart argues the Board's finding that he repeatedly failed to adhere to the applicable standard of care is not supported by substantial competent evidence.

K.S.A. 77-621(c)(5) and (7) allow this court to grant relief where the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure, or where the agency action is based on a determination of fact made by the agency that is not supported by substantial competent evidence when viewing the record as a whole. Substantial competent evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. See *Sampson v. Sampson*, 267 Kan. 175, 181, 975 P.2d 1211 (1999).

Dr. Hart raises two arguments concerning the sufficiency of the evidence. First, the hospital records of the six patients were not included in the agency record and as such the "facts" relied upon by Dr. Powell were not in the record. Second, Dr. Powell did not explicitly refer to the appropriate standard of care for each patient.

Dr. Hart concedes that Dr. Powell testified he had breached the standard of care relating to his treatment of two of the patients, P.G. and J.M. However, Dr. Hart states that Dr. Powell testified that his treatment of B.W. did not deviate from the standard of care and that Dr. Powell did not testify as to the appropriate standard of care for V.M., M.P., or L.C.

For each one of the six patients, Dr. Powell testified how Dr. Hart performed excessive surgery without sufficient studies, evaluations, or findings to justify surgery, and/or performed excessive surgery. He also testified Dr. Hart had managed post-operative care in a manner not consistent with standard practice when removing the nasogastric tube immediately after surgery, and Dr. Hart had failed to properly document necessary patient information for certain patients. The Board made findings of fact for each of the improper treatments and supported the findings with lengthy medical conclusions similar to those testified to by Dr. Powell.

The district court set forth an excellent analysis on this issue:

"The crux of Dr. Hart's argument in this regard seems to stem, again, from the allegation that there was no expert testimony as to the standard of care or competent evidence that the standard of care was breached by Dr. Hart. Quoting *Cox v. Lesco*, 23 Kan. App. 2d 794, 935 P.2d 1086 (1997), Dr. Hart argues that because the practice of medicine is not an exact science, and in many instances there is more than one method which may be utilized by a doctor, the mere fact that one method is preferred over another does not necessarily mean that one method is better than the other. However, the court went on to state that the cross-examination of a doctor in that case with regard to how he *preferred* to treat types of shoulder injuries was not relevant in determining whether there was a deviation from the standard of care. Here, it appears that the Board was not looking at various acceptable methods in the treatment of a particular problem, but was looking at the invasiveness of the procedures utilized by Dr. Hart prior to the utilization of other less invasive procedures and found the problems were not with his technical surgical skills, but with his professional judgment.

"In citing the *Cox* case, Dr. Hart continues with the contention that "[i]t is an unavoidable corollary of these rules that the expert's opinion must explicitly refer to the standard of care." However, as stated previously, administrative agencies are not bound by the technical rules of evidence. As noted by the Board, in a civil malpractice action, whether the judge or jury is the trier of fact, there is a very pragmatic necessity for expert testimony with regard to the standard of care—the trier of fact is more than likely very unfamiliar with the professional standard of care for doctors or attorneys or any other profession involved in a malpractice action. Here, however, this is a matter within the expertise of the Board and although specific language regarding the standard of care was not used at the hearing, this does not mean that the standard of care was not adequately established or understood. This Court finds that Dr. Hart has not shown that the order of the Board was not based on substantial competent evidence. Further, the Court finds deference should be given to the Board in this instance, given the nature of the Board's expertise in matters involving the various standards of care for the healing arts profession."

We agree with the district court's analysis.

Within the context of Dr. Hart's challenge to the evidence supporting the Board's decision, he argues the presiding officer engaged in unlawful procedures by making findings of fact not based exclusively on the evidence or on matters officially noticed in the proceedings. Dr. Hart contends the presiding officer, Dr. Donald D. Bletz, relied on his own expertise as a physician in making determinations contained in the initial order and without his own

expertise, there was not substantial evidence to support the Board's decision. Dr. Hart argues the presiding officer supplied deficiencies in the evidence and even contradicted the Board's own expert to a degree that violated his right to due process of law.

Dr. Hart's complaints concern the following statement in the Board's initial order:

"5. Benson Powell, M.D. is a licensee of the Kansas Board of Healing Arts. He obtained his medical degrees from Northwestern University, and is a Diplomate of the American Board of Surgery. He provided expert testimony for Petitioner [Board]. Respondent [Hart] did not call expert witnesses to refute Dr. Powell's testimony, however Respondent did offer his own opinion testimony on the cases in question. *Though Dr. Powell did not state a specific standard of care for each professional service discussed at the hearing, this Presiding Officer is able to make the necessary findings based upon Dr. Powell's and Dr. Hart's testimony, and relying upon his own expertise as a physician.*" (Emphasis added.)

Dr. Hart's argument is again prefaced on the claim that there is no evidence in the record to support the Board's decision that his conduct fell below the appropriate standard of care. He claims the presiding officer had to rely on his "expertise" to supply deficiencies in the evidence and consequently his right to due process was violated since he was not able to cross-examine the "Presiding Officer Expert."

The above italicized statement by the presiding officer in the initial order does not mean there was insufficient evidence. It means that Dr. Powell did not state a specific standard of care that is traditionally required in a civil action. See *Heaney v. Nibbelink*, 23 Kan. App. 2d 583, 586-87, 932 P.2d 1046 (1997) (expert testimony is necessary to establish the applicable standard of care and to establish a breach thereof). Although Dr. Powell did not state a specific standard of care, we recognize that courts do not require that an expert pinpoint the exact medical procedure in which the doctor fell below the standard of care and also that the technical rules of evidence are relaxed in administrative hearings. See *Smith v. Milfeld*, 19 Kan. App. 2d 252, 256, 869 P.2d 748, *rev. denied* 253 Kan. 861 (1993); K.S.A. 77-524.

As previously stated, the purpose of the Board is to have various experts in the medical profession patrol and regulate the healing

arts. Courts have held that administrative agencies are entitled to rely upon their own expertise. See *Sunflower Racing, Inc. v. Board of Wyandotte County Comm'rs*, 256 Kan. 426, 885 P.2d 1233 (1994); *State v. Turner*, 217 Kan. 574, 538 P.2d 966 (1975); *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P.2d 828 (1968). We agree with the district court that there is no evidence that the presiding officer was acting as his own expert, only that he relied upon his own expertise to understand the evidence as it related to whether Dr. Hart's conduct fell below the standard of care in addition to observing the testimony of Dr. Hart and Dr. Powell. Where substantial evidence is presented that supports a finding of a violation of the KHAA, Board members are entitled and expected to rely on their own expertise and experience in making these decisions.

The Board's order is supported by substantial competent evidence. We also find that the Board's "Amended Notice of Filing of Agency Record" stated "those portions [of the agency record] not forwarded to the District Court are maintained by the Board and will be supplied upon request of the Court or a party." Dr. Hart made no request to include the hospital records in the agency record. We find no error in their not being added to the record absent a showing of prejudice.

Next, Dr. Hart argues K.S.A. 1999 Supp. 65-2836(s) is an unconstitutional delegation of legislative power to a nongovernmental agency in violation of Article 2, § 1 of the Kansas Constitution. K.S.A. 77-621(c)(1) permits review of an agency decision where the agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied.

The constitutionality of a statute is a question of law over which an appellate court exercises unlimited review. *Lemuz v. Fieser*, 261 Kan. 936, Syl. ¶ 1, 933 P.2d 134 (1997). In *Peden v. Kansas Dept. of Revenue*, 261 Kan. 239, Syl. ¶ 2, 930 P.2d 1 (1996), *cert. denied* 520 U.S. 1229 (1997), the court stated the manner in which we view constitutional issues:

"A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally

valid, the court must do so. A statute must clearly violate the constitution before it may be struck down. This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute."

In this case, the Board found that Dr. Hart's privileges at two hospitals were permanently suspended, after a fair hearing process, on the grounds that Dr. Hart had engaged in a pattern of failing to practice within the standard of care to a degree which would constitute negligence. The court found there was clear and convincing evidence that Dr. Hart had violated K.S.A. 1999 Supp. 65-2836(s).

K.S.A. 1999 Supp. 65-2836(s) provides:

"A licensee's license may be revoked, suspended or limited, or the licensee may be publicly or privately censured, or an application for a license or for reinstatement of a license may be denied upon a finding of the existence of any of the following grounds:

. . . .

"(s) Sanctions or disciplinary actions have been taken against the licensee by a peer review committee, health care facility, a governmental agency or department or a professional association or society for acts or conduct similar to acts or conduct which would constitute grounds for disciplinary action under this section."

The Board is the entity entrusted by the legislature with administering the provisions of the KHAA. See K.S.A. 65-2812. The KHAA provides a comprehensive scheme to regulate those involved in the practice of the healing arts. *Vakas v. Kansas Bd. of Healing Arts*, 248 Kan. 589, 592, 808 P.2d 1355 (1991). Administration of the KHAA includes the tasks of licensing—issuance, revocation, and reinstatement. K.S.A. 65-2831; K.S.A. 1999 Supp. 65-2836.

On the other hand, when a peer review committee, health care facility, a governmental agency or department, or a professional association or society sanctions or disciplines a doctor, said entity is not acting in a legislative capacity in licensing. In *Gonser v. Board of County Commissioners*, 1 Kan. App. 2d 57, Syl. ¶ 2, 562 P.2d 102 (1977), the court set forth the following test:

"An action by an agency or board that looks to the future and changes existing conditions by making a new rule to be applied thereafter is legislative or administrative. An action by an agency or board that declares and enforces liabilities as

they stand on present or past facts and under existing law is judicial or quasi-judicial."

See also *Mobil Exploration & Producing U.S. Inc. v. Kansas Corporation Comm'n*, 258 Kan. 796, 821, 908 P.2d 1276 (1995) (An administrative body empowered to investigate facts, weigh evidence, draw conclusions as a basis for official actions, and exercise discretion of a judicial nature is acting in a quasi-judicial capacity.).

K.S.A. 1999 Supp. 65-2836(s) allows the Board to examine the sanctions or disciplinary actions of the above listed entities and determine if the grounds for the sanction or disciplinary action constitute grounds for revocation, suspension, or limitation of a doctors license under the Act. The Board is certainly not bound by the findings of a hospital peer review committee, for instance, nor is the Board required to take any action based on the sanctions or disciplinary actions of the hospital peer review committee. The Board determines the weight to be given to these findings.

We find K.S.A. 1999 Supp. 65-2836(s) is not an unconstitutional delegation of legislative power to a nongovernmental agency.

Next, Dr. Hart argues that since there was no evidence that his care was below any established standard and that since K.S.A. 1999 Supp. 65-2836(s) is unconstitutional, then the Board's limitations and conditions on his license were arbitrary and capricious.

Having found the Board's order was supported by substantial competent evidence and that K.S.A. 1999 Supp. 65-2836(s) is constitutional, we find the Board's penalty was not arbitrary or capricious. Furthermore, we agree with the district court that the presiding officer thoroughly considered the situation and found that Dr. Hart's problems were in his judgment, not his technical skills, and thoughtfully crafted limitations on Dr. Hart's license to help him overcome his problems without taking away his privilege to practice medicine. This arguably shows an approach well suited to the particular case.

Last, Dr. Hart argues the Board acted beyond its jurisdiction by entering a civil fine against him pursuant to K.S.A. 65-2863a(a).

Under K.S.A. 77-621(c)(2) our standard of review allows relief to a claimant if the agency has acted beyond the jurisdiction con-

ferred by any provision of law. Dr. Hart's claim involves an interpretation of K.S.A. 65-2863a(a) and, consequently, our review is unlimited. See *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

At the pretrial conference, Dr. Hart's counsel requested a continuance of the formal hearing for several weeks because of a change in counsel. Disciplinary counsel objected to the long delay, arguing the public's safety was at risk. The presiding officer granted the continuance but authorized the Board's disciplinary counsel to file a motion for an emergency petition to restrict Dr. Hart's medical practice. In lieu of an emergency petition, the parties agreed to a "Stipulation and Agreement and Enforcement Order" requiring Dr. Hart to obtain presurgical and post-surgical consultations except for limited categories of surgeries and required him to provide a list of all surgical patients on a weekly basis.

The agreement was accepted by the presiding officer and became an order of the Board. Dr. Hart failed to comply with the order. The presiding officer later found there was no reasonable justification why Dr. Hart failed to comply with the agreed order and imposed a $2,000 administrative fine against him pursuant to K.S.A. 65-2863a.

K.S.A. 65-2863a(a) provides:

"The state board of healing arts, in addition to any other penalty prescribed under the Kansas healing arts act, may assess a civil fine, after proper notice and an opportunity to be heard, against a licensee for a violation of the Kansas healing arts act in an amount not to exceed $5,000 for the first violation, $10,000 for the second violation and $15,000 for the third violation and for each subsequent violation."

Dr. Hart argues K.S.A. 65-2863a(a) does not authorize the Board to assess civil fines for violating an order of the Board, as such fines are only allowed for violations of the KHAA (filing false or forged documents with the Board [K.S.A. 1999 Supp. 65-2859]; false impersonation and fraud [K.S.A. 65-2860]; false swearing [K.S.A. 1999 Supp. 65-2861]; and practicing without a license [K.S.A. 65-2867]). Dr. Hart maintains the phrase "any other penalty prescribed under the Kansas healing arts act" in K.S.A. 65-2863a(a) refers to those specific criminal misdemeanors stated in K.S.A.

1999 Supp. 65-2859, K.S.A. 65-2860, K.S.A. 1999 Supp. 65-2861, and K.S.A. 65-2867.

Dr. Hart also argues that if the legislature intended to give the Board a remedy for a violation of its orders, then the legislature could have expressly stated its intent, similar to those statutes regulating tattoo artists by the Board of Cosmetology in K.S.A 65-1954 and regulation by the Board of Technical Professions in K.S.A. 74-7039.

We are not persuaded by Dr. Hart's narrow interpretations of the fines and penalties statutes of the KHAA. Rather, the KHAA is intended to protect the public health and, thus, is entitled to a broad interpretation. See *State v. Mountjoy*, 257 Kan. 163, 177, 891 P.2d 376 (1995) (where statute is designed to protect public, statutory language must be construed in light of the legislative intent and purpose and is entitled to broad interpretation to carry out public purposes). We broadly interpret the KHAA to find that a violation of a previous order of the Board can be construed as a violation of the KHAA.

The language of K.S.A. 65-2863a does not define a "violation" of the KHAA, and we will not limit its application only to those acts listed by Dr. Hart. We agree with the district court's decision that given the nature and purpose of the Board, the legislature intended to authorize the Board to regulate the healing arts. The Board must have the ability to use K.S.A. 65-2863a to impose administrative fines if necessary when a licensee violates an order of the Board. Without such authority, a temporary order, such as the one executed in this case, which is made for the benefit of the public safety, health, and welfare, would be practically meaningless.

The various statutes of the KHAA also support our ruling that a violation of a Board order is subject to an administrative fine. Under K.S.A. 1999 Supp. 65-2836, the legislature has listed the various grounds for revocation, suspension, limitation, or denial of licenses. One of the grounds is stated in K.S.A. 1999 Supp. 65-2836(k): "The licensee has violated any lawful rule and regulation promulgated by the board or violated any lawful order or directive of the board previously entered by the board." The pen-

alty for violating one of these grounds is some form of restriction of a licensee's license. Concurrently, the language "in addition to any other penalty prescribed under the Kansas healing arts act" in K.S.A. 65-2863a(a) applies to this situation and permits the assessment of a civil fine against the licensee for a violation of the KHAA.

We do not find the Board acted improperly in assessing a $2,000 civil fine for Dr. Hart's violation of the lawful order previously entered by the Board.

Affirmed.