No. 123,200

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SEYED SAJADI, M.D.,
*Appellee*,

v.

KANSAS BOARD OF HEALING ARTS,
*Appellant*.

SYLLABUS BY THE COURT

1.

The statute governing revocation or suspension of licenses permits the Board of Healing Arts to take disciplinary action against a physician who is dually licensed in another state and who has had disciplinary action taken against them by the proper licensing authority of another state, territory, District of Columbia, or country. K.S.A. 65-2836(j). In determining the appropriate sanction to impose, the Kansas Board of Healing Arts may properly consider all facts and circumstances which gave rise to the sanction in the state where the conduct occurred.

2.

Engaging in the practice of the healing arts is a privilege. Accordingly, the Board of Healing Arts is vested with broad discretion in ensuring that the public health, safety, and welfare of Kansans are shielded from the unprofessional and improper practice of medicine. In carrying out that responsibility when sanctioning a physician in accordance with K.S.A. 65-2836(j), the Kansas Board of Healing Arts is not limited to imposition of a sanction which simply mirrors the disciplinary measure taken in the state that acted first.

1

3.

The sanctioning authority governing the Board of Healing Arts is defined and limited exclusively by the law of this state. The Guidelines for the Imposition of Sanctions published by the Board of Healing Arts are simply a resource intended to aid the Board in determining the appropriate sanction in the cases that come before it. They are not mandates and are not intended to constrain the Board from exercising its entire range of authority in any given case.

Appeal from Shawnee District Court; THOMAS G. LUEDKE, judge. Opinion filed September 24, 2021. Reversed.

*Tucker L. Poling*, former general counsel, *Courtney Cyzman*, general counsel, and *Warran D. Wiebe*, deputy general counsel, Kansas State Board of Healing Arts, for appellant.

*Russell Keller* and *Mark W. Stafford*, of Forbes Law Group, of Overland Park, for appellee.

Before BUSER, P.J., HILL and ISHERWOOD, JJ.

ISHERWOOD, J.:  The Kansas State Board of Healing Arts imposed three sanctions against Dr. Seyed Sajadi including public censure, a $5,000 fine, and limitations on his practice of medicine. The district court affirmed the censure and fine but rescinded the limitations imposed on Dr. Sajadi's medical license. The Board appeals to this court seeking reversal of the district court's order and argues the district court improperly substituted its judgment for that of the Board. Because we find that the Board's decision consisted of sanctions that were reasonable and valid under Kansas law, we reverse the district court's decision rescinding the practice limitations on Dr. Sajadi's medical license.

FACTUAL AND PROCEDURAL BACKGROUND

Dr. Seyed Sajadi is a physician and surgeon licensed to practice medicine in Kansas and Missouri. He had owned and operated clinics in both states under the name of Lipo Body Enhancement, LLC (Lipo Body), where he performed various cosmetic and surgical procedures. Dr. Sajadi's primary office is in Overland Park, Kansas, but he often traveled to Springfield, Missouri, to perform procedures.

In June 2013, Dr. Sajadi performed an abdominal liposuction surgery on Patient 1 at the Springfield, Missouri office of Lipo Body. Dr. Sajadi had three different cell phone numbers and shared at least two of those with Patient 1. He instructed her to text or call after surgery if complications arose. Within a few hours of Patient 1's surgical procedure, Dr. Sajadi was satisfied that her condition was stable, so the doctor left Springfield to return to his home in Overland Park, 2 hours and 40 minutes away. Dr. Sajadi did not have a secondary protocol in place if Patient 1 was unable to reach him. He also had not forged an agreement with local healthcare professionals or hospitals to monitor his patients or provide for their post-surgical care should the need arise. Finally, he did not have admitting privileges at any Springfield area hospitals.

That evening, Patient 1 experienced light-headedness, secreted fluids, and developed pools of blood in her bed. Her husband repeatedly sought to contact Dr. Sajadi at both numbers the doctor had provided but his efforts were fruitless. Dr. Sajadi apparently did not recognize the number for Patient 1's husband, so he declined to answer any of the calls.

After failing to reach Dr. Sajadi, Patient 1 went to an emergency department in Springfield, where healthcare providers diagnosed her with third spacing of fluid following liposuction. The hospital admitted her for observation. About 30 minutes after trying to reach the doctor, Patient 1's husband received a call back from him. Following

3

the conversation with the spouse, Dr. Sajadi contacted the hospital to learn more about Patient 1's condition.

A formal complaint was filed with the Missouri State Board of Registration for the Healing Arts (Missouri Board) as a result of Dr. Sajadi's care and treatment of Patient 1. In March 2018, the doctor entered into a settlement agreement with the Missouri Board to resolve the incident involving Patient 1. The agreement included stipulated facts detailing the events which prompted the disciplinary action taken against Dr. Sajadi. The sanctions imposed by the Missouri Board included a public reprimand and an order for Dr. Sajadi to successfully complete an agency approved course on communication.

A month later, the Kansas Board of Healing Arts (the Board) received a Disciplinary Alert from the Federation of State Medical Boards and learned that Dr. Sajadi was sanctioned in Missouri for "Conduct/Practice Which Is Or Might Be Harmful/Dangerous to the Health of the Patient/Public." The Board issued a Summary Order finding that Dr. Sajadi violated K.S.A. 65-2836(j) when the Missouri Board took disciplinary action against him. The Board imposed a public censure and $10,000 fine. Dr. Sajadi requested a hearing before the full Board seeking reconsideration of the Summary Order.

The Board conducted an administrative hearing in response to the doctor's request, and Dr. Sajadi testified in order to better explain the underlying facts of the incident with Patient 1. Additionally, Dr. Sajadi's attorney provided the Board with a copy of the settlement agreement between the doctor and the Missouri Board. The Board concluded that the facts contained within the agency record, including Dr. Sajadi's hearing testimony, demonstrated that the doctor engaged in itinerant surgery in a manner that endangered patient safety.

4

The Board issued a Final Order outlining the sanctions it deemed appropriate, including a public censure and a $5,000 fine. The Board also imposed these limits on Dr. Sajadi's Kansas license to practice medicine and surgery:

"Licensee shall make arrangements to be physically present to attend to the patient, if needed, within 20 minutes notice (initial contact) at all times during the first 24 hours following any surgical procedure conducted by Licensee. For the purpose of this requirement, '20 minutes' refers to the total time to travel to the local location at which the Licensee has admitting privileges.

"Prior to conducting any surgical procedure, Licensee must have a written protocol in place that provides for appropriate backup coverage in the event the Licensee cannot be immediately reached in the first 24 hours following the surgical procedure and/or if Licensee unexpectedly becomes unavailable during that time period. Such protocol must be communicated to and agreed to by the patient prior to the date of surgery.

"Licensee shall not conduct any surgical procedure unless Licensee has admitting privileges with a hospital within 20 miles of the location at which the surgical procedure is conducted."

Dr. Sajadi petitioned the district court to review the Board's Final Order and argued that the order was unreasonable, arbitrary, and capricious under K.S.A. 77-621(c)(8). The court concurred that the doctor violated K.S.A. 65-2836(j) based on the disciplinary action taken by the Missouri Board. It upheld the Board's sanctions of public censure and a $5,000 fine but agreed with Dr. Sajadi that the practice limitations the Board placed on his medical license were unreasonable and eliminated that sanction. The court's conclusion stemmed from its belief that (1) the sanction imposed by the Board should align with that imposed in the state where the issue originated; (2) in imposing sanctions the Board should adhere to those set out in the Board's Guidelines for the Imposition of Disciplinary Sanctions; and (3) the Final Order issued by the Board should not be more onerous than the Summary Order.

5

The Board timely appeals.

ANALYSIS

THE PRACTICE LIMITATIONS THE BOARD IMPOSED AGAINST DR. SAJADI'S KANSAS MEDICAL LICENSE WERE SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE AND WERE NEITHER ARBITRARY NOR CAPRICIOUS.

*We review the Board's decision for substantial evidence and reasonableness.*

"Judicial review and civil enforcement of any agency action . . . shall be in accordance with the Kansas judicial review act." K.S.A. 65-2851a(b); see *Ryser v. Kansas Bd. of Healing Arts*, 295 Kan. 452, 458, 284 P.3d 337 (2012). Under the Kansas Judicial Review Act (KJRA), this court considers this appeal from the district court as if the doctor's petition for review of the Board's Final Order had originally been filed with this court. See *Hanson v. Kansas Corporation Comm'n*, 58 Kan. App. 2d 82, 91, 464 P.3d 357 (2020).

On appeal, the burden of proving the invalidity of the agency action rests with the party asserting such invalidity. K.S.A. 77-621(a)(1); *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 953, 335 P.3d 1178 (2014). Thus, while the Board initiated this appeal, the burden of establishing that the Board's decision lacked the requisite factual foundation and was unreasonable or capricious rests with Dr. Sajadi. A court will only grant relief in the limited set of circumstances set out in K.S.A. 77-621(c). As for this case, it would be whether:

> "(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

6

"(8) the agency action is otherwise unreasonable, arbitrary or capricious." K.S.A. 77-621(c).

If the action of the Board is constitutionally authorized, it is presumed valid on review unless not supported by substantial competent evidence and is so wide of its mark that it is outside the realm of fair debate, or is otherwise unreasonable, arbitrary, or capricious and prejudicial to the parties. *Vakas v. Kansas Bd. of Healing Arts*, 248 Kan. 589, 594, 808 P.2d 1355 (1991). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). When analyzing the evidence considering the record as a whole, the reviewing court "shall not reweigh the evidence or engage in de novo review." K.S.A. 77-621(d).

*The Board's decision was supported by substantial competent evidence.*

The practice of the healing arts is a privilege, not a right. K.S.A. 65-2801. Our Legislature has vested the Board with the authority to administer the Kansas Healing Arts Act (KHAA). K.S.A. 65-2812. Thus, its 15-person membership consisting of five doctors of medicine, three doctors of osteopathy, three doctors of chiropractic form, one podiatrist, and three public members bears the responsibility to license and regulate all practitioners of the healing arts in Kansas. K.S.A. 65-2813.

Any licensee under the KHAA may have his or her license "revoked, suspended or limited, or the licensee may be publicly censured or placed under probationary conditions, or an application for a license or for reinstatement of a license may be denied upon a finding of the existence of any" of several reasons as set out by the statute. K.S.A. 65-2836. The reason at issue in Dr. Sajadi's case is found at subsection (j) which provides:

7

"(j) The licensee has had a license to practice the healing arts revoked, suspended or limited, has been censured or has had other disciplinary action taken, or an application for a license denied, by the proper licensing authority of another state, territory, District of Columbia, or other country."

The Board, the district court, and the parties agree that Dr. Sajadi violated the KHAA by virtue of his Missouri sanction. Where their respective roads diverge is the extent to which that sanction may lawfully impact the doctor's Kansas medical license. That is the issue we are tasked with resolving.

According to Dr. Sajadi, the Board's conclusion lacks a foundation grounded in substantial competent evidence because it rests only on his testimony and the agency record, neither of which purportedly offered a comprehensive account of the Missouri incident. He asserts that the Board did not even have a copy of the Missouri decision to review and without that report the Board was limited to entering a Final Order based strictly on the existence of the Missouri sanction.

The agency records available to the Board included a copy of the Summary Order which contained a summation of the facts the doctor stipulated to as part of the Missouri settlement. They also had a chance to hear testimony from and ask questions of Dr. Sajadi as to the specifics of the incident. As a product of those resources, the Board learned that Dr. Sajadi performed surgery on Patient 1 in Springfield, Missouri, and within hours of that surgery, left to return home to Overland Park, Kansas, a little over 2 hours away. Despite maintaining a practice in Springfield, Dr. Sajadi did not take the initiative to partner with any medical professionals in that area to assist with post-operative care of his patients should the need arise. Nor had he secured admitting privileges at any area hospitals if his patients experienced complications. The sole measure of post-operative care he established for his patients was to provide them with different cell phone numbers where they could reach him if assistance was needed. He did not have an answering service; he received his own calls directly.

Unfortunately, Patient 1 developed post-surgical complications which demanded her admittance to the hospital. But because of Dr. Sajadi's absence from the jurisdiction and lack of a therapeutic protocol, Patient 1 was denied the benefit of a treating physician who was familiar with her case or her care. Moreover, and perhaps more disconcerting, is that the singular mechanism the doctor did have in place, his availability by phone, likewise proved ineffective as he declined to answer each of his phones when Patient 1's husband attempted to reach him for assistance at the onset of the patient's complications.

From its inception, the disciplinary proceeding at issue was focused solely on the matter involving Patient 1. We acknowledge that the agency record did not include a formal copy of the Missouri incident report but note there is also no indication Dr. Sajadi ever sought to supplement that record with such a report on the grounds that the record was otherwise lacking. Nor has he advanced an argument highlighting that information the report contained which he believes was critical to an analysis of his case. Moreover, Dr. Sajadi has not directed us to statutory language or caselaw to buttress his claim that the report was the key the Board needed to have before it could take substantive action founded upon the details of the Missouri incident.

Our research suggests that the Board is not restricted in the manner Dr. Sajadi proposes. In *Shushunov v. Kansas Bd. of Healing Arts*, No. 112,136, 2015 WL 718079 (Kan. App. 2015) (unpublished opinion), the Board revoked the license of pediatrician Sergey Shushunov, M.D., for felony convictions in Illinois. In their efforts to arrive at the appropriate resolution of that case, the Board, as well as this court, reviewed the facts underlying Shushunov's convictions. Both bodies considered that Shushunov entered the home of his wife's paramour to confront him about their affair. After walking through the man's unlocked door, Shushunov pointed a handgun at him, repeatedly punched him, and yelled at him to leave his wife alone. Shushunov pleaded guilty to, and was convicted of, attempted armed robbery and aggravated battery in Illinois. At the conference hearing to revoke Shushunov's license to practice medicine in Kansas, the Board reviewed evidence,

9

including mitigating circumstances presented by Shushunov, and concluded that Shushunov had failed to present clear and convincing evidence that he would not endanger the public.

In our view, *Shushunov* reflects that when a Kansas licensed physician commits an act in another state which lawfully provides the grounds for discipline or revocation of the physician's medical license in that state, the Board and reviewing Kansas courts are not precluded from considering all relevant factors. That broad scope is consistent with the duties contemplated by the Legislature and allows for a process that ensures Kansans' public health, safety, and welfare are insulated from harm.

Dr. Sajadi also argues that the Board's conclusion that he engaged in an aberration from the standard of care in his treatment of Patient 1 was not supported by substantial competent evidence. The technical rules of evidence are relaxed in administrative hearings and reviewing courts do not mandate that an expert testify to the precise medical procedure which fell below the standard of care. See K.S.A. 77-524; *Smith v. Milfeld*, 19 Kan. App. 2d 252, 256, 869 P.2d 748 (1993). In *Hart v. Kansas Bd. of Healing Arts*, 27 Kan. App. 2d 213, 2 P.3d 797 (2000), Dr. Hart argued, as Dr. Sajadi does here, that the lack of specific testimony related to the standard of care rendered the evidence insufficient to support the Board's conclusion and corresponding sanction against him. This court was not persuaded and observed that the Board did not object to Dr. Hart's technical skills, but with his professional judgment, a matter that fell squarely within the Board's expertise:

> "[A]lthough specific language regarding the standard of care was not used at the hearing, this does not mean that the standard of care was not adequately established or understood. This Court finds that Dr. Hart has not shown that the order of the Board was not based on substantial competent evidence. Further, the Court finds deference should be given to the Board in this instance, given the nature of the Board's expertise in matters involving the various standards of care for the healing arts profession." 27 Kan. App. 2d at 216.

10

We agree with the court's analysis in *Hart*. The Board did not scrutinize the efficacy of the liposuction surgery Dr. Sajadi performed, but his judgment in the post-surgical care he afforded his patients. When the evidence presented is substantial and supports a finding that a violation of the KHAA occurred, Board members are entitled and expected to rely on their own expertise and experience in making these decisions. That is precisely what occurred in Dr. Sajadi's case. The Board is peculiarly qualified to predicate judgment in the sphere of the public health, safety, and welfare of our citizens and that judgment ought not to be readily interfered with. *Kansas Bd. of Healing Arts v. Foote*, 200 Kan. 447, 459, 436 P.3d 828 (1968). We have no trouble finding that substantial competent evidence supported the Board's decision that Dr. Sajadi committed acts in Missouri that necessitated imposing practice limitations on his Kansas medical license to ensure our citizens are insulated from the unprofessional and improper practice of medicine.

*The Board's decision was not unreasonable, arbitrary, or capricious.*

Dr. Sajadi also argues that the Board's Final Order cannot be permitted to stand because the practice limitations it imposed are unreasonable. "An agency action is arbitrary and capricious if it is unreasonable or without foundation in fact." *Wright v. Kansas State Board of Education*, 46 Kan. App. 2d 1046, 1059, 268 P.3d 1231 (2012). The Kansas Supreme Court has explained that an action is arbitrary if a court acts "without adequate determining principles" or acting without sound reason and judgment. *Dillon Stores v. Board of Sedgwick County Comm'rs*, 259 Kan. 295, Syl. ¶ 3, 912 P.2d 170 (1996).

Our review occurs under the umbrella of statutes which are remedial or designed to protect the public. "Legislation which is remedial in nature is to be liberally construed to effectuate the purpose for which it was enacted. A statute which is designed to protect

11

the public must be construed in light of the legislative intent and is entitled to broad interpretation." *Gonzales v. Callison*, 9 Kan. App. 2d 567, 570, 683 P.2d 454 (1984).

Dr. Sajadi contends that imposition of the limitations on his license was unreasonable because he was not afforded adequate notice. He essentially claims he was unaware he would need to defend the quality of care he provided to Patient 1.

Notice is considered sufficient when it is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of an action and to afford the parties an opportunity to present any objections." *Johnson v. Brooks Plumbing, LLC*, 281 Kan. 1212, 1215, 135 P.3d 1203 (2006). K.S.A. 77-518(c)(7) addresses notice for administrative proceedings and requires "a statement of the issues involved and, to the extent known to the presiding officer, of the matters asserted by the parties." Notice complies with this provision when it advises the licensee of the facts supporting the charges against him or her. See *DeBerry v. Kansas Bd. of Accountancy*, 34 Kan. App. 2d 813, 820, 124 P.3d 1067 (2005). We are not persuaded by Dr. Sajadi's assertion that the Board deprived him of the right to adequate notice.

First, the Summary Order for which Dr. Sajadi requested reconsideration, and which was part of the agency record, contained a detailed summary of facts which he stipulated to as part of his settlement agreement in Missouri. The scope of the Summary Order was limited to the Missouri incident. And the formal notice of hearing provided to the doctor prior to his hearing before the full Board specifically stated that "[t]he issues to be determined in the Conference Hearing [are] whether to uphold, amend, or dismiss the Summary Order *and/or take other action authorized by the Healing Arts Act arising out of the issues and circumstances described in the Summary Order* and briefing submitted by the parties." (Emphasis added.) Finally, and perhaps most notably, when the doctor's counsel addressed the Board, not only did he speak of the facts in detail, but also acknowledged the Board's ability to assess and impose appropriate disciplinary action. To

12

that end, he even cautioned the Board not to execute a heavy-handed approach in Dr. Sajadi's case because to do so could have a chilling effect on the willingness of other Kansas physicians to enter into settlement agreements in other states for fear of reprisal by the Kansas Board.

Thus, not only was Dr. Sajadi aware of the substantive issue before the Board, but also that the Board possessed the discretion to order the sanction it deemed appropriate following a review of the agency record and the arguments of the parties. There is no indication from the record that either Dr. Sajadi or his counsel felt blindsided by the content of the hearing. K.S.A. 77-506 affords the doctor the ability to request a formal hearing "[a]t any point" in the proceeding. No such request was ever made.

From the record before us we are confident Dr. Sajadi received notice which enabled him to make meaningful opportunity of the hearing the Board provided. We are equally confident that the practice limitations imposed by the Board were reasonable. The limitations have a direct bearing on post-surgical patient practice. They simply require Dr. Sajadi to be physically present within 20 minutes' notice if a patient requires aid in the first 24 hours following surgery, to have a protocol for backup, and to not perform any surgery unless he has privileges within 20 miles of the location where he performed the surgery. In our view, those are very reasonable expectations to place upon one entrusted with the privilege of providing for the health and well-being of Kansans. Particularly one who has previously demonstrated poor judgment related to post-surgical care of his patients.

*The district court substituted its judgment for that of the Board.*

As stated previously, the district court found that because the practice limitations instituted by the Board (1) conflicted with the sanction imposed in the state where the issue originated; (2) contravened the sanction discussed in the Board's Guidelines for the

13

Imposition of Disciplinary Sanctions; and (3) were impermissibly more stringent than the Summary Order, they were unreasonable and should be reversed.

Although the district court may have come to a different conclusion than the Board about the appropriate sanctions in Dr. Sajadi's case, it was not the function of that court to substitute its judgment for the Board and craft a sanction it considered more palatable. See *Lacy v. Kansas Dental Bd.*, 274 Kan. 1031, 1040, 58 P.3d 668 (2002) (district courts may not substitute its judgment for that of an administrative agency). The Board's findings carry a presumption of validity, and a district court must not set aside the Board's decision simply because it may disagree. *Kansas Gas & Elec. Co. v. Kansas Corporation Comm'n*, 239 Kan. 483, 496-97, 720 P.2d 1063 (1986). Yet we conclude that is precisely what occurred here.

*There is no authority for the district court's conclusion that the Board was prohibited from imposing a sanction founded upon the details of the Missouri incident.*

This conclusion by the district court is akin to Dr. Sajadi's position that the Board is prohibited from stepping beyond the mere existence of the Missouri sanction to delve into the details of the incident which prompted that sanction. As we stated, there simply is no legal authority to support the conclusion that the Board is required to turn a blind eye to the specifics of the occurrence which led to the imposition of a sanction in a sister state. In our opinion, to mandate the same would be antithetical to the goals sought by the KHAA. Again, the practice of the healing arts is a privilege. The State has the right to regulate, through its agencies, the practice of medicine and this authority is broad in scope. *Corder v. Kansas Bd. of Healing Arts*, 256 Kan. 638, 654, 889 P.2d 1127 (1994). The Board, in its expertise, drafted highly refined, post-surgical practice limitations for Dr. Sajadi's Kansas medical license to ensure Kansas residents receive quality compassionate care throughout the duration of their treatment by this physician. These

14

restrictions fall precisely within the scope of the obligation with which the Board is entrusted.

*The district court erred in finding that the sanction imposed by the Board must parallel that imposed by the Missouri Board.*

In addressing the reasonableness issue, the district court turned to the Guidelines for the Imposition of Disciplinary Sanctions published by the Board. The guidelines are simply a resource intended to aid in the assessment of appropriate sanctions. They are not mandates. The district court highlighted that the guidelines recommend imposition of "parallel actions" in Kansas when a sanction is imposed in a different state. The court determined the practice limitations imposed on Dr. Sajadi by the Board were "much more onerous" than the action taken by the Missouri Board, a measure which, in the district court's opinion, lacked justification and was therefore unreasonable. In so doing, the court essentially stripped the Board of its legislatively awarded discretion to impose the sanctions it concludes are appropriate, based on its expertise, in each set of circumstances. There is no indication the guidelines contemplate such rigidness in their application. To the contrary, the language included within that resource reflects the opposite to be true. In its "Non-binding Table of Common Sanctions" the Board cautions the reader as follows:

> "This table does not have the force of law, regulation, or binding policy. It does not constitute the analytical framework that will necessarily guide the Board's sanctioning analysis in every case. By publishing this information, the Board does not limit itself to any form of disciplinary order and it may consider its entire range of authority. The Board may depart from the sanction identified as an 'example of common sanction' as it deems appropriate in any case without additional notice. **The Board's sanctioning authority is defined and limited exclusively by the applicable statutes, regulations, and settled Kansas case law. The information contained herein is provided to give insight into the considerations that the Board commonly applies to its analysis**

15

**pursuant to applicable law.**" Kansas State Board of Healing Arts, Guidelines for the Imposition of Disciplinary Sanctions, p. 12.

The district court assigned a presumptive status to the listed sanctions which does not exist. There is no indication that the Board's authority is constrained by the disciplinary actions taken in another state. When the court's finding undermines the well-settled law that a rebuttable presumption of validity attaches to all actions of an administrative agency, we will not allow it to stand. See *Jones v. Kansas State University*, 279 Kan. 128, 139-40, 106 P.3d 10 (2005).

*The district court's conclusion that the Board was prohibited from including sanctions within its Final Order that were more stringent than those set forth in the Summary Order was erroneous.*

Unlike a Final Order, Summary Orders do not arise out of a review conducted by or a hearing held before the entire Board. Rather, Summary Orders emerge from an administrative determination which finds simply that facts exist to support an order for sanctions under the KHAA. In essence, a Summary Order is best described as a "proposed order" that only acquires force and effect if there is no objection to the order. See K.S.A. 77-537. If a party requests a hearing, however, the Summary Order becomes a nullity because the matter proceeds to a de novo hearing before the full Board without deference to the findings or sanctions proposed in the Summary Order. K.S.A. 77-537(a)(4); K.S.A. 77-537(c).

Unlike the cursory review of the case which yields a Summary Order, a hearing before the entire Board will involve the presentation of testimony and receipt of evidence, as it did in Dr. Sajadi's case. After the proceeding, the Board applies its expertise and determines what sanctions, if any, are appropriate because of the full body of evidence before it. The evidence presented here yielded a finding that specific practice limitations were appropriate to protect the public. Given the distinctly different processes which

16

drive Summary and Final Orders, it is perfectly reasonable to expect that a full hearing would lead to more refined and particularized sanctions. The district court's ruling reflects a misunderstanding of the distinction between the two levels of inquiry that result in Summary and Final Orders. That flawed analysis cannot sustain a finding that the Board's imposition of practice limitations was unreasonable.

We find that the Board's imposition of practice limitations was reasonable and the district court's decision to eliminate those restrictions was error. The decision of the district court is reversed. The decision of the Board imposing practice limitations on Dr. Sajadi's Kansas medical license is reinstated.

Reversed.